9790.  ALFRED STRUCK COMPANY *v.* SLICER.

The petition as finally amended was not subject to the demurrer attacking it on the ground that it showed on its face a complete accord and satisfaction.

DECIDED NOVEMBER 12, 1918.

Rule against attorney; from Fulton superior court—Judge Bell. April 4, 1918.

The petition as finally amended was as follows:

"The petition of Alfred Struck Company, a corporation, respectfully shows:

"1.  J. S. Slicer, of said county, was, on and for some years prior to May 19th, 1910, and continues still to be, an attorney at law and a member of the bar of this court.

"2.  On and prior to said day your petitioner had an account and claim amounting to approximately eleven thousand dollars principal, besides interest, for labor and materials furnished by petitioner in and for the construction of the Forsyth Building in the City of Atlanta, for security of which petitioner had a materialman's lien on the building and real estate improved, under the laws of said State in such cases made.

"3.  On or about said 19th day of May, 1910, your petitioner's secretary, H. L. Weinedel, being in said city for the purpose of taking measures to protect petitioner in respect of the premises, called upon said J. S. Slicer, as such attorney, with a view, if they agreed, of employing him to look after the business.

"4.  The claim being for a large amount, petitioner was determined not to place it in the hands of a lawyer, without a firm and explicit agreement in advance as to what he should charge for his services.  And, after stating his case, petitioner's said secretary, Weinedel, asked said J. S. Slicer to state what fees or commissions he would charge petitioner if they placed the claim in his hands; and he, Mr. Slicer, in answer thereto stated that he would represent petitioner upon the following named terms:  (1)  That he would file petitioner's claim of lien for a fee of ten dollars, which, if no further service was required, would be all he would charge; (2)  that if the claim was not then paid voluntarily by the debtor to petitioner, and his services were necessary in collecting it, and he succeeded in effecting the collection without suit, his fee in that event would be five per cent. of the amount collected; and (3) that

if the claim was not collected without litigation, but went to suit, in that event his fee would be ten per .cent. of the amount collected by suit.

"5. Said Mr. Weinedel then and there accepted Mr. Slicer's proposal and they agreed that petitioner's claim would be placed in his hands upon the terms above set forth, and, in pursuance of said agreement, on or about the 6th day of June, 1910, sent the papers in the case to said J. S. Slicer. He filed and had recorded petitioner's claim of lien in the clerk's office of this court. The matter went into litigation.

"6. On March 7, 1913, said J. S. Slicer wrote that he had collected $3,511.40 on account of said claim, and, in remitting petitioner therefor, deducted $700.00 as for his fee. Upon receipt of said Slicer's letter and check the next day, March 8, 1913, petitioner immediately returned the check to Mr. Slicer and called his attention to the fact that, under the contract between them, he was not entitled to deduct more than ten per cent. of the collection. On March 13 thereafter Mr. Slicer returned said check and wrote asking petitioner to use the check pending the settlement of the question if he should not be allowed more than ten per cent., said Slicer having written petitioner that the litigation had proven to be a very tedious and lengthy one and that the amount he was now asking was a very small fee, considering the service that he claimed to have rendered. Your petitioner thereupon used the check, but with the distinct understanding that it did not thereby accede to said Slicer's contention for a larger fee, but insisting that he live up to the contract made when the claim was placed in his hands.

"7. On or about April 28, 1914, said J. S. Slicer told your petitioner's said secretary, Mr. Weinedel, who was then in Atlanta again, that he had associated the law firm of Moore & Pomeroy in the case, but did not intimate to him that any additional fees would be required of petitioner by reason thereof.

"8. Thereafter, on March 8, 1916, petitioner received a letter from said Moore & Pomeroy [a copy of which is attached], stating that they had collected the sum of eighty-eight hundred and eighty-nine dollars and twelve cents ($8,889.12) in full and final settlement of the balance due on petitioner's claim, and inclosing a check for $6,666.56, the difference of $2,222.56 being deducted,

the letter stated, as attorney's fees. Upon receipt of this letter and check petitioner wrote immediately to said J. S. Slicer, protesting against the overcharge and insisting that he refund and pay over to petitioner the sums deducted in excess of the contract fee of ten per cent. And after some correspondence, said J. S. Slicer wrote petitioner under date of March 23, 1916, denying the contract and refusing to make any restitution. By the direction of said defendant, petitioner's said money was paid by the defendants in the case to Mr. Hudson Moore, of the firm of Moore & Pomeroy, and taken by him to the Atlanta National Bank, where, with $6,666.56 thereof, Mr. Moore purchased a New York exchange payable to petitioner, which, as stated, . . was sent to petitioner by the defendant, and the balance, $2,222.56, was divided by Messrs. Slicer and Moore equally between themselves.

"9. Petitioner shows that said Slicer withholds moneys belonging to petitioner, collected upon said claim, amounting to sixteen hundred and eighty-two dollars and ninety-one cents ($1,682.91), wrongfully, in violation of his duty of an attorney at law.

"Wherefore petitioner prays the rule and order of this court, calling upon said J. S. Slicer to pay over to your petitioner the said sum of sixteen hundred and eighty-two dollars and ninety-one cents ($1,682.91), with interest thereon from March 23, 1916, at the rate of twenty per cent. per annum, or show good cause, if any he can, to the contrary.

"Owens Johnson, petitioner's attorney."

The defendant demurred on the ground that the petition set forth no cause of action. The court sustained the demurrer and dismissed the petition, on the idea that the petition showed that there was a complete accord and satisfaction. To this judgment the defendant excepted.

*Owens Johnson, E. M. & G. F. Mitichell,* for plaintiff.

*King & Spalding,* for defendant.

LUKE, J. The petition does not show on its face that there had been a complete accord and satisfaction, and therefore it was error for the trial judge to sustain a demurrer attacking it on this ground. An accord and satisfaction is a contract, and consequently must be based on a valid consideration. *Richmond &c. R. Co.* v. *Walker,* 92 *Ga.* 485 (17 S. E. 604) ; *Carlton* v. *W. & A. R. Co.,* 81 *Ga.* 531 (7 S. E. 623) ; *Armour* v. *Ross,* 110 *Ga.* 403 (35

S. E. 787). There was no consideration for the alleged accord and satisfaction in the instant case. Bouvier's Law Dictionary (vol. 1, p. 103) defines accord and satisfaction as an agreement between two parties to give and accept something in satisfaction of a right of action which one has against the other, which when performed is a bar to all actions on this account. The same authority, dealing with the same subject, declares: "It must be advantageous to the creditor, and he must receive an actual benefit therefrom which he would not otherwise have had. . . Restoring to the plaintiff his chattels or his land, of which the defendant has wrongfully dispossessed him, will not be any consideration to support a promise by the plaintiff not to sue him for those injuries." These statements are supported by abundant authority, and are, we think, a clear, succinct, and correct enunciation of the principle applicable to the petition under consideration, and clearly show that there was no accord and satisfaction. So also Bouvier's Law Dictionary declares (p. 107): "Accord and satisfaction, when completed, has two effects: *it is a payment of the debt; and it is a species of sale of the thing given by the debtor to the creditor in satisfaction.*" [Italics ours.] This statement very strongly emphasizes the essential element that the thing which the creditor receives must belong to the debtor. The contrary is distinctly alleged in the petition under review. Where one claims a debt against another, the correctness of which is disputed, and the debtor sends a check or other medium of payment to the creditor, with the statement that the payment is in full settlement of the claim, the creditor cannot accept and use this payment and afterwards maintain a suit for the balance. In such a case the debtor has given something which belongs to him, upon the condition that the creditor accept it in full settlement of the claim. It will be recalled that in the case at bar the defendant did not part with anything which belonged to him. The money sent to and accepted and used by the plaintiff was the plaintiff's own property. This statement is sufficient of itself to show that the doctrine of accord and satisfaction did not apply in this case. As illustrative of the fallacy of the defendant's contention that the petition showed on its face that there was a complete accord and satisfaction, plaintiff's counsel in his brief states the following hypothetical case, which we deem entirely apropos: A enters into a bind-

ing contract with B, whereby the former is to shoe a team of four horses entrusted to him at the cost of $2 per head, and the latter returns only three of the horses, saying, "I agreed to shoe these four horses for $2 a head, or $8 altogether, but I find that it is worth one fourth of the team of four horses. I have therefore taken one of the horses, and here are the other three. Notwithstanding I had a firm contract with you to do the work for $8, and you entrusted these horses to me under that contract, still I am going to charge you one horse." We cannot bring ourselves to the conclusion that by accepting the three horses, which were his property, B would be barred from thereafter instituting suit to recover the horse held by A as payment for shoeing all four horses, when the latter was under contract to do the entire work for $8.

The decision in the case of *Ryan* v. *Publishing Co.*, 16 *Ga. App.* 83 (84 S. E. 834), is relied upon by the defendant, who contends that it controls the instant case. That case though somewhat akin to this case, is nevertheless clearly distinguishable on its facts, the all-important distinction being that in the *Ryan* case the relation of debtor and creditor existed, whereas in this case no such relation is shown. See also *Roberts* v. *Bank of Eufaula*, 20 *Ga. App.* 226 (3) (92 S. E. 1015). We therefore reiterate that the trial judge erred in sustaining the demurrer and dismissing the suit.

*Judgment reversed. Wade, C. J., and Jenkins, J., concur.*