GEORGIA RAILWAY & POWER COMPANY *v.* ENDSLEY.

No. 6364.   DECEMBER 8, 1928.

*Colquitt & Conyers* and *Sidney Smith*, for plaintiff in error.
*G. Seals Aiken*, contra.

FORTSON, J.   On March 25, 1926, Mrs. G. M. Endsley brought a suit in the municipal court of Atlanta, to recover for damage done to her automobile in a collision with a street-car of the defendant, the Georgia Railway & Power Company. On March 26, 1926, she brought a suit against the same defendant in the superior

court of Fulton County, to recover damages for injuries alleged to have been sustained to her person in the same collision. No plea in abatement was filed to either suit on the ground that another action was pending, but, on the contrary, to each action the defendant pleaded simply a general denial of liability. On May 18, 1926, the plaintiff obtained a verdict and judgment in the municipal court for fifty dollars, which was paid by the defendant. Thereafter, on September 3, 1926, the defendant filed a plea in bar to the suit in the superior court, averring that the damage to the plaintiff's property and the alleged injuries to her person were occasioned by the same tortious act and constituted but a single cause of action; and that as the plaintiff had "elected to bring, maintain, and prosecute to judgment and payment" the suit for property damage, she is estopped from proceeding further with the suit for personal injuries. The plaintiff demurred to this plea, on the ground that the two suits "do not constitute a single cause of action," and on the further ground that "the defendant knew the suit in the municipal court was pending at the time it filed its answer to the suit in the superior court, as shown on the face of its amended answer and plea, and did not elect to file a plea of lis pending [sic] at the time as required by law." The judge of the superior court overruled the demurrer, sustained the plea, and dismissed the suit. The plaintiff excepted and carried the case to the Court of Appeals, where the judgment of the superior court was reversed on the ground that injury to person and damage to property occasioned by the same act or acts of negligence constitute two separate and distinct causes of action. 37 *Ga. App.* 439 (143 S. E. 386). The defendant then made application to this court for writ of certiorari, which was granted.

■ It is well settled that a single tortious act which causes only personal injuries gives to the injured individual but a single right of action, no matter how varied or numerous the injuries may be. 1 C. J. 1117, n. 2. It is equally as well agreed that but one action may be maintained for a single wrongful or negligent act which destroys or damages numerous items of another's property. 1 C. J. 1117; 1 R. C. L. 346. See also *Oglesby* v. *Stodghill,* 23 *Ga.* 590; *Cunningham* v. *Norris,* 19 *Ga.* 583 (65 Am. D. 611). It is true that there are certain expressions in the decision of *Pearson* v. *Reid,* 10 *Ga.* 580, cited by the Court of Appeals, which indicate

that separate items of damage to property growing out of a single trespass constitute two causes of action, but a careful reading of that decision discloses that it was based on the rule then obtaining as to the allowance of amendments at the trial term, and that the expressions referred to were obiter. And in harmony with the principle just enunciated, the great weight of authority in this country is to the effect that a single tortious act which causes another to suffer both personal injury and property damage constitutes but one cause of action. Birmingham So. Ry. Co. v. Lintner, 141 Ala. 420 (38 So. 363, 109 Am. St. R. 40, 3 Ann. Cas. 461); Kimball v. L. & N. R. Co., 94 Miss. 396 (48 So. 230); Fields v. Philadelphia, 273 Pa. 282 (117 Atl. 59); Nokken v. Avery Mfg. Co., 11 N. D. 399 (92 N. W. 487); Doran v. Cohen, 147 Mass. 342 (17 N. E. 647); Baltimore R. Co. v. Ritchie, 31 Md. 191; Segar v. Barkhamsted, 22 Conn. 295; Chicago &c. R. Co. v. Ingraham, 131 Ill. 659 (23 N. E. 350); Lamb v. St. Louis &c. R. Co., 33 Mo. App. 489; King v. Chicago R. Co., 80 Minn. 83 (82 N. W. 1113, 50 L. R. A. 161, 81 Am. St. R. 238); Mobile R. Co. v. Matthews, 115 Tenn. 172 (91 S. W. 194); Sprague v. Adams, 139 Wash. 510 (247 Pac. 960, 47 A. L. R. 529); Cassidy v. Berkovitz, 169 Ky. 785 (185 S. W. 129).

There is however, on the last proposition, American authority to the contrary. See Riley v. Sicilian Paving Co., 170 N. Y. 40 (62 N. E. 772, 57 L. R. A. 176, 88 Am. St. R. 636); Ochs v. Public S. R. Co., 81 N. J. L. 661 (36 L. R. A. (N. S.) 246, 80 Atl. 495); Watson v. Tex. &c. R. Co., 8 Tex. Civ. App. 144 (27 S. W. 924); Boyd v. A. C. L. R. Co., 218 Fed 653. In these contra decisions (which follow the ruling laid down in the English case of Brunsden v. Humphrey, L. R. 14 Q. B. D. 141), a number of reasons are advanced to support the conclusion that two causes of action arise where a single tortious act injures both person and property. It is argued that because the period of limitation prescribed for an action involving personal injuries is different from that relating to property damage, two causes are indicated; and the same conclusion is urged because of the different rules relating to damages for the two classes of injuries; and also because the law respecting assignment, and abatement, and survival of actions is not the same. But the rule seems to be bottomed on the theory that the gravamen of an action in tort is the *damage* resulting from the

wrongful act, rather than the wrongful act itself, and that this is true because a tortious act can become actionable only when some damage is suffered by the plaintiff. Thus the Court of Appeals in this case declares: "In our construction of the statutes and decisions in this State, the cause of action is composed not simply of the negligent or wrongful act of the opposite party, but necessarily includes the damage which the injured party sustains. The code provides that for every violation of a contract express or implied and *for every injury done by another to person or property,* the law gives a right to recover and a remedy to enforce it, and that damages are given for the injury sustained. Civil Code (1910), §§ 3652, 4390, 4502. It is true that if the injury be small or the mitigating circumstances be strong, nominal damages only are given; and in some cases damages are awarded when no actual damage whatever has been proved. But in all cases the element of damage must enter in some way before a suit is maintainable in tort, and so it is provided that general damages are such as the law presumes to flow from any tortious act and may be recovered without proof of any amount. Civil Code (1910), § 4507; *National Exchange Bank of Augusta* v. *Sibley, 71 Ga. 726.* ' In a popular sense, the word "damage" does frequently mean depreciation in value, whether such depreciation is caused by a wrongful or a lawful act; but in statutes or other legal instruments giving compensation for "damages" the word always refers to some actionable wrong—some loss, injury, or harm which results from the unlawful act, omission, or negligence of another. ' *Austin* v. *Augusta Terminal Ry. Co., 108 Ga.* 671, 674 (34 S. E. 852, 47 L. R. A. 755). The damage, therefore, in this State is the gravamen of the action; and hence, in a case of this sort, the injury to the plaintiff's person and the damage to his property constitute different causes."

If the reasoning there given be correct—if the gravamen of the cause is the damage, it would follow that a separate cause arises for each item of damage that flows from a tortious act, which, as we have seen, is not the law either in the United States or in England. And if a separate cause does not arise for each injury inflicted, we obviously must look elsewhere for the essence of the cause of action. It is true that it is argued that but a single right is invaded when personal injuries are inflicted, and but a single right

is infringed when property is damaged, regardless of the number of items of injury in each case; and that the plaintiff therefore is entitled to but a single action for each class of damage, but that as to each class a separate and distinct cause of action arises. This argument is too metaphysical for practical application; and, it seems to us (as was said by Chief Justice Coleridge in dissenting from the ruling in the Brunsden case), "it is a subtlety not warranted by law to hold that a man can not bring two actions if he is injured in his arm and in his leg, but can bring two if besides his arm and leg being injured his trousers which contains the leg, and his coat, which contains the arm, have been torn." And in reply to the argument that no cause of action can exist without damage to the plaintiff, we have but to say *damnum absque injuria esse potest;* and that no hurt, loss, or injury—no deprivation of a right of a plaintiff—is actionable unless the defendant has committed some wrongful or negligent act; and that it is more consonant with the analogies of the law to hold that the gravamen of an action in tort is the tortious act of the defendant, rather than the damage which it produces. Nor are we impressed by the argument that separate and distinct causes of action must be given because of different methods of assessing damages, or because of different periods of limitation, or for the reason that there are different rules relating to assignment, and abatement and survival, as to the two classes of damage. The obvious reply to the argument as to the method of assessing damages is, that the same objection could be urged against the rule requiring the plaintiff to sue in one action for all the various items of damage growing out of a personal injury. As to limitations: we merely call attention to the fact that a party would be barred as to each class at precisely the same time, whether they constitute one cause of action or two; and that if some of his items of damage become barred, he may still sue for those against which the statute has not run, whether there be one action or two; for while a plaintiff may not, without the express or implied consent of the defendant (or for some equitable reason), split up a single cause of action for the purpose of bringing separate suits for the whole, he certainly may, if he chooses to do so, bring an action for less than he is entitled to receive. And as to assignment, and abatement and revival, it is only necessary to say that they present simply questions of making proper parties.

We therefore hold that for a single wrongful or negligent act which injures both his person and his property an individual has but a single cause of action. In this ruling we are supported by the case of *W. & A. R. Co.* v. *Atkins, 141 Ga.* 743, 747 (82 S. E. 139), where it was held, in denying a motion for a rehearing, that the careless striking of the plaintiff's wagon, whereby he suffered damage both to his person and to his property constituted but a single tort, and that a settlement for the property damage barred an action for damages on account of the personal injuries. As we construe that decision, it is controlling on the point under discussion. We think the court there made a direct and necessary ruling that the plaintiff had but a single cause of action for both his property damage and personal injuries. We are aware that Judge Speer interpreted it in the Boyd case, supra, as deciding only that a plaintiff might bring in one action a suit for both damage to property and personal injuries, but was not compelled to do so. However, with all respect to the learned jurist, we think he was mistaken. It appears from the opinion that a release which the plaintiff Atkins had signed was pleaded by the defendant in full satisfaction and accord of the action which was brought originally to recover damages both for personal injuries and damage to a mule and wagon. By amendment the plaintiff sought to avoid the release by alleging that it was procured from him, an illiterate person, by the fraudulent representation of the defendant's agent that he was settling only for the property damage, and that before instituting the suit he had tendered back to another agent of the defendant the amount paid him. He again amended his petition by striking his claim for property damage, leaving it to stand solely for personal injuries. The Supreme Court held that his tender was not good, because not made to the proper agent, and denied the plaintiff's right to maintain his suit. He made a motion for a rehearing, and urged that he had the right, without refunding the money paid him or making any tender of it back to the company, to attack the release for fraud in so far as it related to his personal injuries, and, if successful, proceed with his amended action for those injuries. He relied upon the case of *Butler* v. *Richmond & D. R. Co., 88 Ga.* 594 (15 S. E. 668), where it was held that if an illiterate plaintiff signed by his mark a release showing on its face an accord and satisfaction of

the cause sued on, upon the representation of the defendant that he was only receipting for wages, it was not necessary for him to refund the money in order to attack the release for fraud and proceed with his suit for damages for personal injuries. In denying the motion Justice Lumpkin said: "In the case at bar *the alleged tort was a single one*—the careless striking by a train of the defendant of a wagon which the plaintiff was driving. From this tort *several items of damage* were alleged to have resulted, including personal injury to the plaintiff and damages to his mule and wagon. The petition was originally brought to recover all three elements of damage. . . It will thus be seen that the paper signed purported to be a full settlement of all damages arising from the collision, . . both to his person and to his wagon and mule. He knowingly received compensation for some of the damages arising from such a collision. He nevertheless contends that if his tender was not good, he can still recover for the injury done to his person. The difference between this contention and that involved in the *Butler* case, supra, is clear. The distinction between receiving money on account of a *claim or debt entirely distinct* and receiving money as payment for *some of the damages resulting from a tort* is clearly drawn in *W. & A. R. Co.* v. *Burke,* 97 *Ga.* 560 (25 S. E. 498), and *Petty* v. *Brunswick & Western Ry. Co.,* 109 *Ga.* 666, 675 (35 S. E. 82)." (Italics ours.)

Not a little of the difficulty in deciding cases of this character apparently arises from a reluctance on the part of courts to give effect to rules of procedure which seem to them harsh and unfair. Thus Judge Speer has stated that he was influenced in reaching a decision in the Boyd case by his desire to prevent the perpetration of what he believed would be a judicial wrong. He said: "It is of course to the interest of the public that there should be an end of litigation; but where the authorities are in palpable . . conflict and where no controlling rule has been announced for the direction of the court, it will hesitate long before denying to a plaintiff the right to a hearing upon his declaration of enduring personal injury, permanent mutilation, and the destruction of his life work, because, forsooth, through the mistake of an attorney a declaration had been filed at the same time to recover the value of a machine." But the rule against splitting causes of action as embodied in our Code, § 4331, is neither harsh nor inflexible. And

its proper administration in .cases like the one under consideration need never cause injustice, nor deny the plaintiff any part of the fair and full determination of his every right. Of course we do not intend to say that a plaintiff can be upheld if from a mere want of knowledge of the proper procedure his cause of action is divided into two parts, and, after one of them has been sued to judgment, he institutes an action on the other; nor that he may maintain, as a matter of right, the two actions simultaneously. To permit the former would obviously do violence to a basic, indispensable principle of jurisprudence; to allow the latter would not only contravene our statute and be palpably unfair to the defendant (unless he also be given the right to demand that each item of damage in the cause against him be determined in a separate suit), but would also utterly defeat the prompt, efficient, and economical administration of the law. What we emphasize is that the rule against splitting is not without ameliorating exceptions, and will not be given effect if, as in the case at bar, there are valid equitable reasons for not enforcing it. See 1 C. J. 1109.

It is quite true that the rule is "necessary to prevent multiplicity of suits, burdensome expense and delays to plaintiffs, and vexatious litigation against defendants," as was said in the case of Mobile & O. R. Co. *v.* Matthews, supra; but it is primarily for the benefit of defendants, and being for their benefit they may waive it; this waiver will be presumed if a plaintiff maintains two suits against a defendant at the same time for different items of the same demand, and he fails to interpose timely objection. Thus in the case of *McDonald* v. *Tison,* 94 *Ga.* 549 (20 S. E. 427), it was held that where an account has been split into "several parcels" and three suits simultaneously brought against the defendant, with his knowledge, it is too late after judgment has been obtained and paid in one of the suits to plead "this judgment as a former recovery on the contract in abatement of one of the actions still pending." See also *Teat* v. *Westmoreland,* 19 *Ga. App.* 60 (90 S. E. 1025); 1 C. J. 1109. The two Georgia cases last cited relate to actions ex contractu, but the same rule is applied to torts. Cassidy *v.* Berkovitz, supra; So. Stock Fire Ins. Co. *v.* Raleigh &c. R. Co., 179 N. C. 290 (102 S. E. 504). See also note to Vineseck *v.* Great Northern R. Co., 2 A. L. R. 530 (136 Minn. 96, 161 N. W. 494); 1 C. J. 1109.

The Court of Appeals based its decision on the ground of the plaintiff's demurrer, in which it was insisted that she had two causes of action. Since it reversed the judgment on that ground, that court naturally found no necessity for passing upon the other ground of the demurrer, in which it was urged that the defendant was estopped from pleading the judgment in the municipal court as a bar to the action in the superior court. But the point was clearly made in the demurrer of the plaintiff, preserved in her bill of exceptions, and insisted upon in the brief which her counsel filed in the Court of Appeals. It was well taken and should have been sustained. It was too late for the defendant to object to the splitting of the action into two suits after judgment had been rendered against it in one of them, where both had been started at practically the same time, and where to each the defendant had pleaded only a general denial. In such a situation a defendant is presumed to have waived his right to object; he has impliedly consented.

While the effect of the foregoing decision is to hold that the Court of Appeals erred in its rulings of law, yet its judgment is affirmed for the reasons stated in this opinion; and that court will direct the trial court to apply, upon the next hearing, the rulings made in this decision to the plaintiff's demurrer to the plea of former recovery.

*Judgment affirmed, with direction. Beck, P. J., and Fortson, Eve, and Persons, JJ., concur.*