41716, 41741.  PENNSYLVANIA THRESHERMEN & FARMERS MUTUAL CASUALTY INSURANCE COMPANY v. HILL; and vice versa.

Argued January 10, 1966—Decided January 20, 1966— Rehearing denied March 9, 1966.

*Greene, Neely, Buckley & DeRieux, Thomas B. Branch, III,* for appellant.

*Smith, Ringel, Martin & Lowe, Meade Burns,* for appellee.

EBERHARDT, Judge. Since the cross appeal deals with the matter of pleadings we first dispose of the issues raised in it.

■ Defendant demurred to the petition on the ground that there was not a full assignment of the chose in action and as a matter of law there could be no partial assignment.

It appears from the allegations of the petition that the payment made by Rhode Hill's father in the sum of $432 was prior to the settlement by Pennsylvania Threshermen with Jan Tabaka, in connection with which it took from him the assignment sued upon. We must, therefore, consider the effect of Mr. Hill's payment. It is alleged that it was the intention that the $432, being paid in reimbursement for the items (a) $100 represented by the amount deductible from the loss under the insurance policy, and (b) the inconvenience and loss of use of his automobile which Jan P. Tabaka experienced as a result of the collision and damage, was in full payment for all loss damages suffered over and above the $1,705.51 which was paid by the plaintiff, Pennsylvania Threshermen, and that it was never the intention that this payment be in settlement or satisfaction for the entire damage.

Under the allegations of the petition the payment by Hill's father was a pro tanto payment, simply extinguishing that much

of Tabaka's claim. It does not appear to have been tendered or made in full settlement or satisfaction. There existed no legal obligation on the part of Mr. Hill to pay Tabaka anything on account of the action of his son resulting in the loss of Tabaka's car. Thus, as to him, it was a voluntary payment. If he had not made the payment his promise to do so would have been unenforceable. *Whelan v. Edwards & Hackney*, 29 Ga. 315.

"A payment or other performance by a third person, accepted by a creditor as full or partial satisfaction of his claim, discharges the debtor's duty in accordance with the terms on which the third person offered it." Restatement, Contracts, § 421 (1932). To the same effect, see 1 CJS 482, Accord and Satisfaction, § 12. This rule was applied in *Willcox v. Cobb*, 58 Ga. App. 39 (197 SE 517), and we think it in harmony with what was held in *Whelan v. Edwards & Hackney*, supra. The suit in *Whelan* was brought against the volunteer, not against the debtor. Consequently the statement in the opinion that "Even if Edwards had got the one hundred and fifty dollars in money, what would prevent him from collecting the debt from the son? If another man pays my debt for me, without my consent, it is no payment for me. I remain liable," is obiter. That question was not before the court.

We do not overlook the rule that a person may have but one satisfaction for his injuries, whether to his person or to his property. *Code* § 105-2001; *Donaldson v. Carmichael*, 102 Ga. 40 (29 SE 135); *Georgia R. & Power Co. v. Endsley*, 167 Ga. 439 (145 SE 851); *Griffin Hosiery Mills v. United Hosiery Mills*, 31 Ga. App. 450 (120 SE 789); *Edmondson v. Hancock*, 40 Ga. App. 587 (151 SE 114).

But "[t]here is a genuine distinction between a satisfaction and a release. A satisfaction is an acceptance of full compensation for the injury; a release is a surrender of the cause of action, which may be gratuitous, or given for an inadequate consideration." Prosser, Torts, p. 268 (3d Ed.). Tabaka gave no release in connection with the payment from Mr. Hill, and Mr. Hill obtained none. He simply made a payment which, together with that expected to be obtained from the insurance company and the sale of the salvage, would make "full compensation" by restoring Tabaka to his position.

As Dean Prosser points out, if the injured party gives a *release,* upon a valuable consideration whether amounting to full compensation or not—the cause of action is surrendered, and since there is only one cause of action, all joint tortfeasors are released.[1] But if there is no release, and the payment is not made and accepted as "full compensation" it is only a pro tanto payment, for if the cause of action has not been surrendered, only full compensation will extinguish it. When a release is taken, the consideration paid is presumptively full compensation, and it can be avoided only for duress, fraud, accident or mistake. 1 EGL 171, Accord and Satisfaction, § 11.

---

[1]It would not appear to be essential that legal liability against the releasee be established beyond debate. Cf. *Griffin Hosiery Mills v. United Hosiery Mills,* 31 Ga. App. 450, supra. There is often a bona fide question as to whether he was guilty of actionable negligence, or of whether the injured party might, by the exercise of ordinary care, have avoided the consequences to himself of the releasee's negligence; but if a sum is accepted from the releasee in full satisfaction of the claim, others who may be liable as joint tortfeasors are released because there is but one injury and the injured party has surrendered his cause of action. It should appear that the releasee was so connected with the occurrence or with the principals involved as to be a "joint tortfeasor," and subject to being named as a defendant in an action by the injured party. However, it is difficult to lay down a hard and fast rule. Compare, for example, *Edmondson v. Hancock,* 40 Ga. App. 587, supra, and *Piedmont Hospital v. Truitt,* 48 Ga. App. 232 (172 SE 237), to see some of the obvious problems that might have arisen if there had been a payment by one of the tortfeasors, or a release to one of them.

It has been held that the release of one who is not in fact liable is no protection to those who are, (Carroll v. Kerrigen, 173 Md. 627 (197 A 127)), and that the release of an owner of an automobile does not release the negligent driver who was not his agent or servant and for whose conduct he was in no wise responsible. Rosenfeld v. Stauffer, 121 Pa. Super. 103 (182 A 714). Payment of a gratuity by one who is not a joint tortfeasor does not effect a release of those who are liable. Turner v. Robbins, 276 Pa. 319 (120 A 274).

This is not a new or novel principle in the law of Georgia. Covenants not to sue have been recognized (*Code* § 20-909), as have releases. *Code* § 20-910. The covenant not to sue runs only to the one with whom it is entered into. *Roy v. Georgia R. & Bkg. Co.*, 24 Ga. App. 86 (100 SE 46). But the amount paid under it can be pleaded and proven by another who is jointly liable for the purpose of obtaining credit in assessing full compensation. *Atlantic C. L. R. Co. v. Ouzts*, 82 Ga. App. 36 (2) (60 SE2d 770). We apprehend that a partial payment by one tortfeasor to the injured party could be pleaded and proven by another in a suit brought against him, whether a covenant not to sue were taken or not, the purpose being the same.

In *Donaldson v. Carmichael*, 102 Ga. 40, supra, as we understand that case, it was held that a payment by a joint tortfeasor, whether in whole or in part, if made and accepted in *full settlement* or satisfaction of the injury, will bar any action against another. In so receiving the payment the injured party surrenders his cause of action. In the opinion the court asserted: "The plaintiff is not entitled to receive more than one satisfaction for and in respect to the same injury. As was said by the court in Lovejoy v. Murray, 3 Wall. 1, when the plaintiff has accepted satisfaction in full for the injury done him, from whatever source[2] it may come, he is so far affected in equity and good conscience that the law will not permit him to recover again for the same damage." It is for this reason that a partial payment, with or without a covenant not to sue, not made in full settlement or

---

[2]Not to be confused with a payment of life or accident insurance which the injured party may have carried (*Western & A. R. Co. v. Meigs* ( 74 Ga. 857 (5)), or the gratuitous supplying of medical, nursing, etc. services (*Nashville C. & St. L. R. Co. v. Miller*, 120 Ga. 453, 455 (47 SE 959)), the gratuitous payment of wages during incapacity (*Western & A. R. Co. v. Sellers*, 15 Ga. App. 369 (2) (83 SE 445)), or the payment of workmen's compensation. *Hotel Equipment Co. v. Liddell*, 32 Ga. App. 590 (124 SE 92); *Echols v. Chattooga Merc. Co.*, 74 Ga. App. 18 (3b) (38 SE2d 675); *Borochoff v. Fowler*, 98 Ga. App. 411 (105 SE2d 764); *U. S. Cas. Co. v. Watkins*, 211 Ga. 619 (2) (88 SE2d 20).

satisfaction of the injury, can be pleaded and proven. It is a satisfaction pro tanto only. Cf. 45 Am. Jur. 676, § 4. Mr. Hill's payment is pleaded and proven here, and we hold that the matter of whether his payment, together with that made by Pennsylvania Threshermen amounted to a *full satisfaction of the damage* is a jury question.

While we have held that Mr. Hill was a volunteer in making the payment, it is urged that under *Code* § 105-113 he might be held for the damage to Tabaka's car on the theory that the act of his son was one of vandalism, citing *Landers v. Medford,* 108 Ga. App. 525 (133 SE2d 403). Judge Bell has given a thorough discussion of what an act of vandalism is in *General Accident &c. Corp. v. Azar,* 103 Ga. App. 215 (119 SE2d 82), concluding that it is a wilful or malicious destruction of property. Recently Judge Frankum dealt fully with what a wilful and wanton act in the damaging or destruction of property may be, concluding that it is one "so reckless as to evince an entire want of care on the part of the defendants so as to raise a presumption of a conscious indifference to the consequences," and further that "mere negligence can never amount to such aggravating circumstances. . . ." *Louisville &c. R. Co. v. Young,* 112 Ga. App. 608, 613 (145 SE2d 700). It was held in *Southern R. Co. v. Davis* 132 Ga. 812, 816 (65 SE 131), that mere failure to observe speed laws or to give statutory signals is insufficient standing alone to charge the defendant with wilful and wanton misconduct. The facts here are vastly different from those in *Landers,* which perhaps delineates an outer limit of what may constitute vandalism in this context. It was not contended in the pleadings or in the trial of this case that there was anything in the conduct of young Hill that could amount to vandalism. It is mentioned for the first time in this court. We think that the conduct of Rhode could not be so held and that no liability could attach to his father on that basis. Mr. Hill does not occupy the position of a joint tortfeasor. But if he did, it would not alter the conclusion that we reach, since there was no payment or receipt of the $432 in *full satisfaction* of the damage that Rhode had done to the Tabaka car, nor any release given by which Tabaka surrendered his cause of action.

In *Western & A. R. Co. v. Atkins,* 141 Ga. 743 (82 SE 139),

the defendant pleaded a written release which the injured party had executed, based upon a valuable consideration. It is not in conflict with what we here hold. The same is true of *Pennsylvania Cas. Co. v. Thompson*, 130 Ga. 766 (61 SE 829). In *Universal Credit Co. v. Service Fire Ins. Co.*, 69 Ga. App. 357 (25 SE2d 526), there was a release of the cause of action, a settlement of a pending suit and a written dismissal reciting that a settlement of the action had been accepted by the plaintiff.

It cannot be urged that Mr. Hill was acting as his minor son's agent (*Siegelstein v. Fenner & Beane*, 66 Ga. App. 345, 348 (17 SE2d 907)), or as his guardian, for it does not appear that he had qualified to act in that capacity. *Code* § 49-219; *Nix v. Monroe*, 36 Ga. App. 356 (1) (136 SE 806); 155 ALR 201n. Thus, though Rhode Hill was not a party to any contract or agreement under or by which his father made the payment of $432 to Tabaka, under the Restatement rule, Tabaka, having accepted and retained the benefits of the payment, would be bound by the terms upon which it was offered. Under the allegations of the petition, supported by the evidence, it was offered as a pro tanto payment of what Tabaka would be out-of-pocket over and above the amount to be paid him by the insurance company. After the payment by Mr. Hill there remained outstanding the amount of the claim which was insured and for which Tabaka expected to and did receive $1,705.51 from the company.

In the assignment it was recited that "I Jan P. Tabaka, in consideration [of the payment of $1,705.51] and pursuant to the provisions of said policy, do hereby sell, transfer, assign and set over to [Pennsylvania Threshermen], its successors or assigns, my claim against Rhode Hill for said loss as aforesaid, but only to the extent of the loss which was covered by said insurance and paid by said company." Thus, when Pennsylvania Threshermen made payment to Tabaka it was for all of the claim then existing, and there was no reason why Tabaka could not assign it. It was not a partial assignment.

■ There was a demurrer to the allegation that the payment of the $432 was for the "inconvenience and loss of use" of Tabaka's car, on the ground that it did not appear how many days he had been inconvenienced by the loss of its use. The defendant is

generally entitled to that information and this is usually good ground of demurrer. *McKenzie v. Mitchell,* 123 Ga. 72 (2) (51 SE 34); *Perkins v. Publix Theatres Corp.,* 47 Ga. App. 641 (5) (171 SE 147); *Martin v. Waltman,* 82 Ga. App. 375, 379 (61 SE2d 214); *Community Gas Co. v. Williams,* 87 Ga. App. 68, 83 (73 SE2d 119). Cf. *Atlanta &c. R. Co. v. Hudson,* 62 Ga. 679; *Atlanta Cotton-Seed Oil Mills v. Coffey,* 80 Ga. 145, 150 (4 SE 759); *Telfair County v. Webb,* 119 Ga. 916 (2) (47 SE 218); *Southern R. Co. v. Stearns,* 8 Ga. App. 111 (68 SE 623); *Olliff v. Howard,* 33 Ga. App. 778 (127 SE 821); *Lamb v. Landers,* 67 Ga. App. 588 (4) (21 SE2d 321); *Webb v. May,* 91 Ga. App. 437 (2) (85 SE2d 641). But since loss of use of the vehicle is not an element for which recovery is sought, it appearing from the petition as amended that the claim for that was included in and fully satisfied by Mr. Hill's payment, overruling of this demurrer was not error.

■ We now move to a consideration of the main appeal dealing with the trial of the issue upon its merits.

Appellant (plaintiff below) urges that there was no evidence to support the verdict upholding the plea of accord and satisfaction because the evidence failed to show any meeting of the minds of Jan Tabaka, the owner of the car, and Rhode Hill, who wrecked it, and because the evidence failed to establish that Hill's father was authorized to make a settlement on behalf of his minor son.

Jan Tabaka testified that he had talked with young Hill's father two or three times about the matter and the result of the conversations was that Mr. Hill "said to let him know how much it would be, and he agreed to pay what it would cost for me to get a new car like the one I had and to pay some out-of-pocket travel expense incurred in my trip from Augusta." When asked whether anything had been said by either of them as to whether the payment would constitute a settlement of all claims that he might have against young Hill he answered that as he recalled "the whole conversations were not in that vein."

Mr. Hill testified that he told Tabaka that he did not want him to suffer any loss as a result of the accident and suggested that he find out what the cost would be and that they would then

make a deal. When the matter of the insurance was mentioned Mr. Hill had stated to Tabaka, "I know it's deductible insurance and I don't want you to suffer anything." He asked Tabaka what was deductible under his policy and upon being informed that it was $100 stated, "I will take care of that." He also stated, "You have been out-of-pocket with no car and having to travel from Augusta to Atlanta, and I'll take care of that." After negotiating a trade for another Austin-Healey Tabaka told Mr. Hill that the loss he was going to suffer came to $432, whereupon Mr. Hill asserted: "Well, that suits me. If the insurance company is going to pay some of it and you get the salvage value on your car, and I'll pay the difference so there won't be any loss to you." Pursuant to that Mr. Hill paid the $432 to Tabaka's father, as Tabaka had instructed that he should do, and in doing so wrote a letter explaining that the payment was to cover the difference in the insurance payment and the cost of another car. However, he also testified that in making the payment he was of the opinion that it was to be a full and complete settlement of the matter and that if he had not thought that would be the end of it he would not have paid the check. On cross-examination he testified that there was never any discussion of the claim against his son, Rhode, in the amount of $1,705.51, that there was no contemplation of any compromise of that claim because he thought the insurance company would take care of it and that he would just "fix it so that [Tabaka] wouldn't lose anything, and that was all I thought about it. I didn't want to pay any more money out of my pocket than that."

An accord and satisfaction is itself a contract and requires a meeting of the minds in order to render it valid and binding. *Alfred Struck Co. v. Slicer*, 23 Ga. App. 52, 54 (97 SE 455); *Richardson v. Seibert*, 38 Ga. App. 76 (142 SE 755). Neither the testimony of Jan Tabaka nor that of Mr. Hill discloses any meeting of their minds that the payment by Mr. Hill was to be in settlement of the whole claim, or that full settlement was contemplated. Both the payment of the $432 and its acceptance was with the idea that it would cover items which the insurance did not cover, or which would not be paid by the insurance company. As to the sum total of the whole loss, including all items, it was to be a pro tanto payment.

The evidence demanded a finding against the plea of accord and satisfaction. Mr. Hill's testimony that he thought the payment would be the end of the matter and that he did not want to pay out any further money from his pocket does not alter that. He was in no way liable for any payment on account of the loss. It may have been in his mind that the payment would end the matter, but that was not the tenor of the negotiations had between him and Tabaka nor was the payment made with that condition attached.

The contention that there was no evidence of any authority of Mr. Hill to act for his son in effecting any settlement of Tabaka's claim is also meritorious, though immaterial as to the effect here. As we have indicated above, the son could not have designated the father as his agent for that purpose. *Siegelstein v. Fenner & Beane*, 66 Ga. App. 345, supra. A duly qualified guardian may negotiate a complete settlement and it is conclusive until set aside in a direct proceeding brought for that purpose. *Campbell v. Atlanta Coach Co.*, 58 Ga. App. 824, 825 (200 SE 203); *Griffin v. Collins*, 125 Ga. 159, 164 (53 SE 1004). But it did not appear that Mr. Hill had qualified as his son's guardian.

There was ample evidence of *negligence* on the part of young Hill from his own testimony. He was open, frank and truthful, admitting the facts as to his inexperience in driving the Austin-Healey car, the speed of 40 miles per hour in what he knew to be a 25 mile per hour zone of the street (though it is unnecessary to determine this to have been negligence per .se), his losing control because of his unfamiliarity with the sensitive steering mechanism of the car, none of which was in any way contradicted. No issue was raised as to that; a finding of liability was demanded and the motion to direct a verdict against the defendant on the issue of liability should have been granted. *Smith-East Produce Co. v. Williams*, 112 Ga. App. 620 (145 SE2d 794). See also *Allen v. Safeco Ins. Co. of America*, 108 Ga. App. 278 (132 SE2d 859), though the matter of whether the resulting damage justified the payment of $1,705.51 by Pennsylvania Threshermen, or whether the payment was sufficient to cover the resulting damage remained a question of fact.

The contention by defendant that since he was a minor he

could not be held for negligence in connection with a bailment contract is without merit. There was no bailment here, for Bob Tabaka, from whom young Hill obtained the car, was wholly without authority to make a bailment of the car to him, and Hill knew of that. Consequently, when Rhode Hill took the car he was not a bailee, but a trespasser. The case of *Jones v. Milner*, 53 Ga. App. 304 (185 SE 586), cited in 127 ALR 1443n, has no application and does not require a different conclusion.

As we have pointed out, Mr. Hill was not a joint tortfeasor and was in no wise liable in the matter. Consequently, *Reese v. Brown*, 93 Ga. App. 10 (90 SE2d 683) and others of like tenor have no application.

■ In view of what we have held above the charge of the court on accord and satisfaction was unauthorized and erroneous.

■ There was no error in failing to give an unrequested charge defining the preponderance of the evidence. *Martin v. Waltman*, 82 Ga. App. 375, 380 (61 SE2d 214). That a charge on the credibility of witnesses was given does not require a contrary conclusion.

*Reversed on the main appeal, with direction that a judgment of liability be entered against the defendant, notwithstanding the verdict, and affirmed on cross appeal. Bell, P. J., and Jordan, J., concur.*