## 60812. M. W. BUTTRILL, INC. v. AIR CONDITIONING CONTRACTORS, INC.

POPE, Judge.

Appellee subcontractor entered into a contract with appellant general contractor to furnish and install air conditioning, heating and ventilating systems at Rainbow Village Shopping Center in DeKalb County. Appellee brought this action against appellant to recover $34,815 plus "service charges" for work performed and materials furnished in accordance with the contract. After both parties had rested, the trial court directed a verdict in favor of appellee. We reverse.

1. The subject contract was prepared by appellee and provided the following as to price:

| | |
|---|---|
| Super-X Drug, per guide specs | $25,000.00 |
| Kroger, per plans and specs | 44,170.00 |
| Ben Hyman, per our design | 28,000.00 |
| Small shops and misc. | 26,350.00 |
| Total | $123,520.00 |

Above prices are set as guidelines. Each
tennant [sic] space to be negotiated at time
work is designed and performed.

Appellant's first enumeration of error asserts that this provision was too vague and indefinite to be enforceable.

Appellee's president testified that his company fully performed its obligations under the contract; that the contract was for $123,520; that appellee was paid $88,705; and that there was a principal balance outstanding of $34,815. Appellant neither objected nor offered any evidence contradictory to this testimony. "[E]ven though a contract 'may be lacking in mutuality or definiteness, on account of the uncertainty[,] still when that party has . . . entered into performance of the contract, and the other party has accepted . . . as fulfilling the terms of the proposal, the contract becomes mutual, binding, and enforceable.' [Cits.] 'The law leans against the destruction of contracts on the ground of uncertainty.' . . . 'A contract which is originally and inherently too indefinite may later acquire precision and become enforceable by virtue of the subsequent acts, words, or conduct of the parties . . . Thus, the objection of indefiniteness may be obviated by performance and acceptance of performance.' " *Pine Valley Apts. v. First State Bank,* 143 Ga. App. 242, 244-245 (237 SE2d 716) (1977); *Jones v. Ely,* 95 Ga. App. 4 (1) (96 SE2d 536) (1957). "Furthermore, the issue raised by this [enumeration], not being

asserted at the trial, can not now be asserted as a basis for reversal. *Complete AAA Mfg. Corp. v. C. & S. Nat. Bank,* 119 Ga. App. 450, 452 (167 SE2d 734) (1969).

2. Marcus W. Buttrill, Jr. and S. H. "Pug" Buttrill are brothers and prior to May 1, 1974 both were officers of appellant company. The subject contract was executed for appellee by its president and for appellant by Pug Buttrill on or about March 1, 1974. On May 1, 1974 Pug Buttrill left appellant's employ and formed his own general contracting firm, S. H. B., Inc. (SHB). Pursuant to an assignment arrangement between appellant and SHB, the shopping center project was taken over by SHB; the testimony conflicted as to when appellee was told of this change. Appellee and SHB entered into an agreement identical to the subject contract between appellee and appellant. Although this second contract was also dated March 1, 1974, the testimony conflicted as to the actual date of execution — Pug Buttrill testifying that he told appellee that the subject contract was "wrong" and that appellee then made the second contract and sent it to SHB within 20 to 30 days after the first; appellee's president testifying that the contract between his company and SHB was executed in late 1974 in response to his attempts to arrange a bank loan so that SHB could pay what it owed to appellee. Appellee was unable to collect from SHB due to the bankruptcy of one of the shopping center's major tenants.

On September 10, 1976 Pug Buttrill and another executed a note in favor of appellee which recited that the signatories promised to pay a stated amount "to satisfy debt of S. H. B., Inc. [and] M. W. Buttrill, Inc. . . . for heating, ventilating and air conditioning systems installed at Rainbow Village Shopping Center." Appellant contends that this note constituted a novation or accord and satisfaction of any obligation flowing from appellant to appellee under the terms of their contract "as a matter of law."

"A novation or accord and satisfaction is in itself a contract and must have all the elements of a de novo contract. [Cits.] Therefore, there must be a meeting of the minds if the novation or accord and satisfaction is to be valid and binding." *Mayer v. Turner,* 142 Ga. App. 63, 64 (234 SE2d 853) (1977). At the time he signed the note, Pug Buttrill was no longer associated with appellant. Moreover, he testified that he executed the note as a "personal guarantee" to appellee. Appellee's president wrote a letter, dated the same as the note and consented to by the note's signatories, which stated that the purpose of the note was "to liquidate the indebtedness" to appellee on the shopping center project (see *Shannon Co. v. Heneveld,* 138 Ga. App. 756 (2) (227 SE2d 412) (1976)) while reserving appellee's rights to any liens it may have had against the property. Notwithstanding

the language of the note, there is no evidence that the parties intended the note to be either a novation or an accord and satisfaction of the subject contract between appellee and appellant. See *Pa. &c. Ins. Co. v. Hill,* 113 Ga. App. 283 (3) (148 SE2d 83) (1966); cf. *Brantley Co. v. Lee,* 106 Ga. 313 (2) (32 SE 101) (1898).

3. Appellant also contends that the evidence would support several theories by which the jury could have found in its favor, viz., novation, accord and satisfaction or rescission.

(a) Appellant contends that a novation of the subject contract occurred by reason of the subsequent contract between appellee and SHB. " 'In every novation there are four essential requisites: (1) a previous valid obligation, (2) the agreement of all the parties to the new contract, (3) the extinguishment of the old contract, (4) the validity of the new one. If these essentials, or any one of them, are wanting, there can be no novation.' " *Savannah Bank & Trust Co. v. Wolff,* 191 Ga. 111, 120 (11 SE2d 662) (1940); *Franchise Enterprises, Inc. v. Ridgeway,* 157 Ga. App. 458 (1) (1981).

Appellee's president testified that his purpose in executing the contract with SHB was to obtain additional security with regard to appellant's indebtedness and that he never intended to release appellant from its contract. Marc Buttrill, appellant's president, testified that his company never discussed or received a release from appellee to the effect that appellant would not be looked to for payment on the shopping center project. Pug Buttrill testified that even though an identical contract was executed between appellee and SHB, the subject contract between appellee and appellant was neither abolished nor voided. Since there was no evidence that the subject contract had been extinguished, there was no novation. *Loftis Plumbing &c. Co. v. American Surety Co.,* 74 Ga. App. 590 (1) (40 SE2d 667) (1946); *Leverette v. Harmony,* 69 Ga. App. 126 (2) (24 SE2d 856) (1943). See generally *Acree v. Kay,* 188 Ga. 783 (4 SE2d 820) (1939).

(b) Accord and satisfaction has been defined as "an agreement between two parties to give and accept something in satisfaction of a right of action which one has against the other, which when performed is a bar to all actions on this account." *Alfred Struck Co. v. Slicer,* 23 Ga. App. 52, 55 (97 SE 455) (1918); Code § 20-1201. Since appellee had no right of action against SHB under the contract between appellee and appellant, the defense of accord and satisfaction is inapposite to this situation. See *Warner Robins Supply Co. v. Malone,* 143 Ga. App. 332 (238 SE2d 709) (1977); *Butler v. Ragsdale,* 54 Ga. App. 565 (3) (188 SE 578) (1936).

(c) Subsequent to the subject contract between appellee and appellant, appellee drafted, dated, executed and delivered to SHB an

identical, but separate, contract relating to the Rainbow Village Shopping Center project. The evidence was in dispute as to whether this occurred before any work had been performed on the project or after the work had been substantially completed. Appellee executed a performance bond in favor of appellant on this project but did not execute a bond in favor of SHB. Although Pug Buttrill supervised this project, the evidence was conflicting as to when appellee was informed that SHB rather than appellant was the general contractor. The evidence also conflicted as to whether SHB alone or both SHB and appellant made payments to appellee for work done on this project. Appellee and appellant met frequently during the time period when the shopping center was under construction but never discussed this project. Appellee also contracted with SHB for additional work which was provided at the project.

" 'Parties may by mutual consent abandon a contract so as to make it not thereafter binding . . . A contract may be rescinded by agreement, although the evidence thereof may be by conduct and not by words.' " *Hennessy v. Woodruff,* 210 Ga. 742, 744 (2) (82 SE2d 859) (1954); *Johnson Ventures, Inc. v. Barkin,* 141 Ga. App. 810 (2) (234 SE2d 340) (1977). Since reasonable men could differ as to whether the evidence showed rescission (abandonment) of the subject contract, the trial court erred in removing the case from jury consideration. Accord, *Chew Const. Co. v. Oconee Rest Home,* 149 Ga. App. 677 (1) (255 SE2d 133) (1979); *State Farm &c. Ins. Co. v. Snyder,* 125 Ga. App. 352 (187 SE2d 878) (1972). See Code § 20-905.

4. Since our holding in Division 3 of this opinion is dispositive of the case, we need not consider appellant's remaining enumerations of error.

*Judgment reversed. McMurray, P. J., and Banke, J., concur.*

DECIDED MARCH 17, 1981 — REHEARING DENIED MARCH 27, 1981 —

*Tim Carssow, Duncan A. Roush,* for appellant.
*Steven Schaikewitz,* for appellee.