## A11A0376. BROWN v. LAWRENCEVILLE PROPERTIES, LLC.

(710 SE2d 682)

ANDREWS, Judge.

Timothy Brown brings this appeal from the trial court's grant of partial summary judgment in the amount of $171,485.70 to the landlord Lawrenceville Properties concerning Brown's personal guarantee of a restaurant lease in default. Brown argues that various documents executed after the original lease amount to a novation such that his guarantee of LRG Group's nonperformance would be excused. We disagree and affirm.

The undisputed facts are that on December 15, 2004, the restaurant tenant Lil' River Grill, Inc. entered into a five-year lease with Lawrenceville. Although the lease specified that its term lasted from April 2004 — that is, before the execution of the document — through March 2009, another part, initialed by agents for both sides, moved up the possession date, with Lil' River's option to terminate if not put into possession, from May 1, 2005 to June 1, 2005. The lease also required the parties to specify the actual commencement date of the lease, as follows:

> [Lil' River] agrees that, at the request of Landlord, [Lil' River] shall, following the Commencement Date, execute and deliver a recordable memorandum (Exhibit "E") . . . containing the basic provisions of this Lease, acknowledging that [Lil' River] has accepted possession of the Premises[,] and reciting the exact Commencement Date and termination date of the original Lease Term. . . .

The lease specified that Lil' River would first owe rent on the earliest of three dates: (i) ten days after the premises were "substantially complete and a Certificate of Occupancy is issued"; (ii) the first date on which Lil' River occupied the premises "for business"; or (iii) "78 days" after the execution of the lease, or March 3, 2005. Brown signed the lease with William Green as representatives of Lil' River, and the two also signed an unconditional guarantee of Lil' River's obligations under the lease.

At or soon after the execution of the lease, Brown and Green also

signed a document entitled "Exhibit E: Confirmation of Commencement Date." This version of Exhibit E bears neither an execution date nor a specific lease term. According to Todd Johnson, the principal of LRG, Brown and Green provided this document as an example of the one to be executed when the premises were ready for occupancy. A second version of Exhibit E, again signed only by Brown and Green, has lease term dates of May 15, 2004, to May 14, 2009. A third version of Exhibit E was executed in early 2006, after LRG had assumed the lease from Lil' River. This third version, still bearing the signatures of Brown and Green but also initialed by Johnson and Linda Campbell, a Lawrenceville representative, contains corrections of the previous dates to a lease term of May 15, 2005, to May 14, 2010.

A certificate of occupancy for the premises did not issue until May 17, 2005. Lil' River took possession of the property on May 15. Lil' River began paying rent in August 2005, which was consistent with a May 2005 commencement date as well as a lease provision that the first three months of rent were waived. From May 15, 2005 to May 16, 2006, Lil' River paid rent of $72,250 — that is, the lease's base rent for Year 1 of $102,000 less $29,750 of waived rent.

On September 30, 2005, and with Lawrenceville's consent, Lil' River assigned the lease to LRG Group. In the assignment, Lil' River agreed "that the Landlord [Lawrenceville] and Assignee [LRG] may change, modify[,] or amend the Lease in any way, including the rental to be paid thereunder, and that further assignments may be made, without notice to or consent of Assignor [Lil' River]." Brown signed the assignment as both Lil' River's representative and as the "Personal Guarantor" of "Assignor's obligations."

On the same day, all three parties, including LRG as Lil' River's assignee, agreed to an amendment of the lease with new requirements including that Lil' River provide Lawrenceville with quarterly financial reports and a $500 late fee for rent paid after the fifth of each month. Brown also signed the amendment, which contained a provision that "Tim Brown will continue to personally guarantee the Lease until such time as other entities provide a personal guarantee of the Lease that meets the approval of [Lawrenceville]."

LRG began falling behind in its payments in 2007 and defaulted in May 2008. Lawrenceville repossessed the property and sued Brown for damages and fees. In the course of discovery, Brown admitted that he had "unconditionally guaranteed the performance by LRG Group, Inc. of all of its obligations and liabilities under the Lease, [and] agreed to pay [Lawrenceville] the rent or any arrears thereof and all damages that may arise in consequence of any default by [LRG] under the Lease," including "reasonable attorney fees." After both parties moved for summary judgment, the trial court

granted Lawrenceville's motion concerning Brown's affirmative defense of novation in the amount of $171,485.70, including $22,367.70 in attorney fees, but denied Lawrenceville's motion concerning its claim for stolen equipment in the amount of $70,245.21.

1. Brown first argues that the trial court erred when it concluded that the parties' various corrections of the lease term from May 2005 to May 2010 did not amount to a novation or otherwise invalidate his guarantee. We disagree.

" 'The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part.' OCGA § 13-2-2 (4)." *Town Center Assoc. v. Workman*, 227 Ga. App. 55, 57 (1) (487 SE2d 624) (1997). Guarantees "are to be taken as strongly against the party giving the guarantee, as the sense of them will admit." (Citation and punctuation omitted.) Id. at 58 (1); see also OCGA § 13-2-2 (5).

> In every novation there are four essential requisites: (1) a previous valid obligation, (2) the agreement of all the parties to the new contract, (3) the extinguishment of the old contract, [and] (4) the validity of the new one. If these essentials, or any one of them, are wanting, there can be no novation.

(Citation and punctuation omitted.) *M. W. Buttrill, Inc. v. Air Conditioning Contractors*, 158 Ga. App. 122, 124 (279 SE2d 296) (1981).

Here, the trial court properly looked to evidence extrinsic to the December 2004 lease to reconcile the conflict between its apparent term (April 2004 to April 2009) and its simultaneous requirement that the parties execute Exhibit E in order to set not only the rent commencement date, but also "reciting the exact Commencement Date *and termination date of the original Lease Term.*" (Emphasis supplied.) Brown's own evidence shows that his agent initialed the correction of the occupancy date to June 1, 2005, and it is clear from the conduct of the original parties through September of that year, including Lil' River's failure to insist on the completion of Exhibit E at any point before or after its first rent payment in August, that they had reached agreement concerning both the rent commencement date and the lease term. See *C. L. D. F., Inc. v. The Aramore, LLC*, 290 Ga. App. 271, 273 (1) (659 SE2d 695) (2008) (trial court did not err in correcting an obvious contractual error and in enforcing a guaranty against the guarantor as a matter of law); *M. W. Buttrill*, 158 Ga. App. at 124 (3) (a) (lack of evidence that original contract had been extinguished meant that novation could not have occurred).

2. Brown also argues that the assignment and amendment amounted to a novation such that he was released from his obligations. Again, we disagree.

"Contemporaneous written agreements are perhaps one of the surest ways to establish the intent of the parties in entering into each of those agreements." *C. L. D. F.*, 290 Ga. App. at 273 (1).

In the assignment, Brown agreed that LRG and Lawrenceville were free to "change, modify[,] or amend the Lease in any way." Even assuming that the successor parties actually changed rather than clarified the lease term in the third version of Exhibit E, Brown had ratified such a change in advance. Likewise, even if we were to conclude that the assignment and amendment amounted to a novation, Brown signed both documents as a guarantor, explicitly agreed in the assignment that he would continue to extend that guarantee, and admitted in the course of discovery that he was responsible for any default by LRG. He is therefore liable for that default. See *Anderton v. Certainteed Corp.*, 201 Ga. App. 538, 540 (411 SE2d 558) (1991) (guarantor who "consented in advance to be responsible" for a second note cannot be "discharged as a surety by its execution, even if under other circumstances such a note could be considered a novation"); *First Union Nat. Bank of Ga. v. Gurley*, 208 Ga. App. 647, 650-651 (2) (431 SE2d 379) (1993) (reversing denial of motion for j.n.o.v. where no question of fact existed concerning the validity of a guarantee; a "mere" lack of consideration is "no legal defense" to liability under it).

*Judgment affirmed. Phipps, P. J., and McFadden, J., concur.*

DECIDED MAY 6, 2011.

*Michael J. Anderson*, for appellant.
*Webb, Tanner, Powell, Mertz & Wilson, Anthony O. L. Powell, Melody A. Glouton*, for appellee.