### 5731. CHUNN *v.* EVANS *et al.*

Where one writes to a commission house that he has a certain number of crates of peaches on hand for sale, which he will expect to net him not less than $1.75 per crate, and adds "if you have any prospective purchaser in view now, would be glad to negotiate further with you," and a reply is sent two days later, in a telegram, saying, "Will accept your offer," this does not constitute a contract binding him to sell to the commission house at the price mentioned. His statement as to the price amounts merely to an expression of the view entertained by him as to the value or market price of the peaches, and is not a definite offer to sell at that price then or later.

DECIDED AUGUST 22, 1914.

Action on contract; from city court of Greenville—Judge Revill. May 9, 1914.

A. J. Evans and Henry Carlton brought suit against G. C. Chunn, alleging, that Chunn had damaged them in the sum of $5,250 by reason of the following facts: that the defendant was the owner of a crop of peaches in 1913, growing in Meriwether county, Georgia, consisting of approximately 7,000 crates, and that he wrote a letter on June 12, 1913, to the Georgia Fruit Exchange, of Atlanta, Georgia, offering the crop for sale at $1.75 per crate net, all commissions of the Fruit Exchange for handling the fruit to be above that amount; that the Georgia Fruit Exchange is an association of Georgia fruit-growers, organized for the purpose of marketing the Georgia fruit crop, and buys and sells fruit on commission for the fruit-growers; that H. D. Marks, the manager of the Georgia Fruit Exchange, submitted the said offer to the plaintiffs on June 14, 1913, and the plaintiffs immediately accepted the same at the price and on the terms set out in the defendant's letter above mentioned, and thereupon Marks, manager of the Fruit Exchange, sent a telegram to the defendant on June 14, 1913, agreeing to take the peaches at the price named; that on June 17, 1913, the

Georgia Fruit Exchange mailed to the defendant, at Woodbury, Georgia, a contract covering the sale of approximately 7,000 crates of peaches at the price offered by the defendant, pursuant to the telegram sent to him on June 14 as aforesaid, and also enclosing the check of the plaintiffs for $500, as part payment on account of the purchase; that on June 21 the defendant made his first response to the telegram of June 14 and the letter of June 17 from the Georgia Fruit Exchange, and returned the contract and the check sent to him on June 17, refusing to accept them, and stated that he was at that time "looking for a $2 net proposition, or $2 per crate f. o. b. cars;" that the defendant refused and still refuses to carry out his contract for the sale of the 7,000 crates of peaches, and the plaintiffs are advised and believe that he sold them to other persons at $2 per crate, f. o. b. cars, Woodbury, Georgia, and that such sale was made about a week or ten days after his original offer and its acceptance by telegram on June 14, 1913; that the market for peaches was all the time advancing and has since advanced, and the defendant simply sought to take advantage of the rising market and sell his peaches to a better advantage and for a higher price, in absolute disregard of his contract with the plaintiffs, and to their damage in the sum claimed; that relying on the good faith and integrity of the defendant, the plaintiffs immediately proceeded to recontract and resell the said peaches, and during the week which elapsed between the sending of the telegram on June 14, and the return of the contract and check by the defendant on June 21, the plaintiffs resold practically all of the said peaches at $2.50 per crate net, or at a profit of 75 cents per crate, and they were compelled to buy peaches at $2.50 per crate in order to make good their several contracts of sale, made when relying upon the contract with the defendant; that the present market price, f. o. b. cars, at Woodbury, Georgia, for peaches of the character purchased from the defendant, is $2.50 per crate and more, and the plaintiffs suffered the loss of 75 cents per crate on 7,000 crates, making a total loss and damage of $5,250, which accrued to them by reason of the breach of the contract by the defendant. Attached to the petition were the three letters and the telegram referred to therein, which were as follows: "Woodbury, Ga., June 12, 1913. Georgia Fruit Exchange Atlanta, Georgia. Gentlemen: The writer has something like 7,000 crates fancy mountain-grown Elberta peaches,

which am offering for sale. This crop is the one formerly owned by R. O. Emery, and is in fine condition, having been sprayed thoroughly and highly cultivated. Mr. Emery suggested that I write you stating that this crop is for sale, and that he would be willing that I use his share of the stock; in other words, transfer same to me, provided it would seem profitable to avail myself of your services. Expect the crop to net not less than $1.75 per crate, and commissions charged by you would have to be above this figure. If you have any prospective purchasers in view now, would be glad to negotiate further with you. Yours truly, G. C. Chunn." "Fort Valley, Ga. 6/14/13. To G. C. Chunn, Woodbury, Ga. Your letter twelfth. Will accept your offer, contract to you Monday. Georgia Fruit Exchange. H. D. Marks, manager." "June 17, 1913. Mr. Chunn, Woodbury, Ga. Dear Sir: Enclosed please find contract covering the sale of approximately 7,000 crates of Elberta peaches, f. o. b. cars, at $1.75 per crate. We also enclose check on Citizens Bank Fort Valley for $500, part payment on these peaches. The purchasers of these peaches, Mr. A. J. Evans and Mr. Henry Carlton, are both good, and for your further satisfaction will refer you to Messrs. J. R. & J. L. Betts of your city, these parties having bought both the right to the land and the Fruit Haven Farm. You understand you are to be paid daily at the bank in Woodbury, whenever a car of peaches is ready to move. Please sign the original of this contract and return to this office promptly, so that we may forward the same to Mr. A. J. Evans at Fort Valley. Yours truly, H. D. Marks, General Manager." "Woodbury, Georgia, 6/21/13. Georgia Fruit Exchange, Atlanta, Georgia. Gentlemen: Enclosed find contract and check sent a few days back to close trade for peach crop, approximately 7,000 crates of Elbertas. As I wrote you I would consider an offer of $1.75, I did not consider myself making a straight price, and now think that the crop is worth considerably more. In fact I am informed that my neighbors Messrs. J. L. & J. R. Betts have sold for considerably more and are working in the early varieties, which, of course, will reduce the average price. I am looking for a $2 net proposition or $2 f. o. b. cars proposition, at present. And if this sounds good to you, you might let me hear from you or send a man down to see me. Thanking you for your courtesy, I beg to remain, respectfully, G. C. Chunn."

The defendant filed a demurrer, setting up that the petition fails

to set forth a cause of action; that it does not set forth sufficient facts to establish any liability on the part of the defendant to the plaintiffs; that it does not show that the Georgia Fruit Exchange was ever authorized to sell any peaches for the defendant, or was his authorized agent to do so; and that the petition shows that the defendant never contracted with the plaintiffs for the peaches at any place or time. The defendant demurred specially to paragraph 4 of the petition (which set forth that the defendant wrote to the Georgia Fruit Exchange on June 12, 1913, offering the said peaches for sale at $1.75 per crate, f. o. b. cars, or $1.75 per crate net, the commission charged by the Fruit Exchange for handling the fruit to be above the figures named), for the reason that the letter referred to in that paragraph, and attached to the petition as "Exhibit A," does not contain or make an offer to the Georgia Fruit Exchange or to the plaintiffs, or to any one else, of the peaches referred to in the petition. The defendant further demurred to that portion of the petition which sets forth "Exhibit A," for the reason that the letter therein shown does not contain any offer of the peaches to the plaintiffs, or to the Georgia Fruit Exchange, and gives no authority to the Fruit Exchange to sell the peaches or to act for the defendant in any way whatever. The demurrer was overruled. By an amendment, which the court allowed, over the objection of the defendant, the plaintiffs alleged that by common and universal usage and custom in the peach business, where sales of peaches are made in car-load lots, at a certain price "net," the term "net" means f. o. b. cars at the shipping point at that price; that the crop or approximate number of crates offered for sale by the defendant contemplated car-load shipments, so that by general usage and custom the term "net not less than $1.75 per crate" was equivalent to "f. o. b. cars at $1.75 per crate" at the shipping point of the defendant for these peaches at Woodbury, Georgia. The defendant excepted to the overruling of the demurrer and to the allowance of the amendment.

*Jones & Hatchett,* for plaintiff in error.

*C. L. Sheppard, McLaughlin & Jones,* contra.

WADE, J. (After stating the foregoing facts.) We think the learned trial judge undoubtedly erred in overruling the demurrer, since the defendant's letter dated June 12 was not, in mercantile parlance or in legal effect, a valid and binding offer to sell the

peaches at a fixed and certain price per crate. The language used indicates clearly that on June 12, 1913, the defendant thought the crop should net him not less than $1.75 per crate, over and above all commissions, but it does not say or suggest definitely and positively that he would accept this amount per crate even on that date. It appears to be a mere tentative suggestion, intended to draw from the Georgia Fruit Exchange an expression as to the possible price that might be procured for the defendant. It will be noted that the defendant says that the crop he has for sale is the one formerly owned by R. O. Emery, is in fine condition, etc., and that Mr. Emery suggested that he write to the Fruit Exchange, stating that the crop was for sale, and that he (Emery) would be willing for the defendant to use "his share of the stock," or in other words, would transfer the same to the defendant, provided it would seem profitable for the defendant to avail himself of the services of the Fruit Exchange; and the defendant adds that if the Fruit Exchange has "any prospective purchasers in view now," he "would be glad to negotiate further with" it. The Georgia Fruit Exchange telegraphed to the defendant on the 14th of June, accepting what it construed to be his offer; and the letter of June 12, the telegram of June 14, and the letter of June 17 are relied upon to show offer and acceptance. The telegram says, "Will accept your offer." Precisely what that offer was, if it be treated as an offer at all, it would be impossible to determine, since the defendant stated merely his expectation that the crop would net him not less than $1.75 per crate; it nowhere says that he would actually accept this net sum, nor does it suggest how much more than $1.75 the defendant might exact a day or two days later, or, for that matter, one hour or one minute after he had signed and mailed his communication of the 12th.

In order to make a valid, binding contract, it is necessary that the minds of the parties thereto should meet on all its essential elements; and to make a binding sale, all the essential elements to constitute such a contract must be present. There must be not only an identification of the thing sold, but an agreement as to the price to be paid, *and consent of the parties.* Civil Code, § 4106. Had the defendant said in his original letter that he would accept $1.75 per crate net, and had the Fruit Exchange accepted this offer with due promptitude, this would have constituted an agreement as to

the price, and would have shown the necessary assent of the parties, but where one party merely says that he has articles for sale which he expects to net him a certain price, and adds that he will be glad to "negotiate further," it indicates merely what is at the time his opinion as to the value of such goods or articles. To write one, for instance, that the writer has on hand 500 bales of cotton for sale, which he expects to realize for him not less than 10 cents per pound, over and above freight or broker's commissions, will not bind the writer to accept the price suggested, when he does not thereafter see fit to do so.

There are several questions referred to in the briefs of counsel which would be legitimate subjects for determination under the demurrer filed, but since the effect of our construction of the letter from the defendant practically amounts to a final determination of the case in his favor, no useful purpose would be served in extending this opinion.     *Judgment reversed.   Roan, J., absent.*