40079. CROWN CARPET MILLS, INC. v.
C. E. GOODROE COMPANY, INC.

Decided September 4, 1963—
Rehearing denied September 19, 1963.

*Pittman & Kinney, H. E. Kinney, L. Hugh Kemp,* for plaintiff in error.

*Noland B. Harmon, Mitchell & Mitchell, Douglas Mitchell,* contra.

BELL, Judge. ■ Defendant Crown Carpet Mills' motion for a directed verdict, made at the conclusion of all of the evidence, was limited to the specific contention that Sobel had no authority as agent to contract to sell jute and "there is absolutely no proof here that there is any authority and this agreement not only says that but says that definitely he shall not have the authority." The trial court denied this motion, and after a jury verdict for plaintiff, the defendant filed an amended motion for judgment notwithstanding the verdict which attempted to broaden the grounds beyond that relied upon in the motion for directed verdict.

It would be improper for this court to consider the possibility of error in the trial court's overruling of the motion for judgment n.o.v. on any ground other than that urged in the motion for directed verdict. "In this state the sole purpose of a motion for judgment notwithstanding the verdict is to permit the court to review and reconsider his ruling on the antecedent motion for a directed verdict." *Shetzen v. C. G. Aycock Realty Co.,* 93 Ga. App. 477, 479 (92 SE2d 114). For this reason we feel constrained to suggest that restraint be exercised by counsel when urging a motion for judgment n.o.v. so as to limit the argument to those grounds properly before the court for review. However, to avoid creation of another needless technicality in appellate procedure, we shall not refuse to consider the motion for judgment n.o.v. in its entirety, but we shall limit consideration to the ground which is the same as that urged on motion for directed verdict.

■ On motion for directed verdict and in its motion for judgment n.o.v., defendant alleges that there is no evidence that Sobel, general manager of Crown's local plants, had the authority to sell a surplus of jute, one of the raw materials used by Crown in manufacturing carpet. Crown, however, introduced in

evidence the written employment agreement between Sobel and Crown which was in effect at the time of the transaction involved in this case. By the terms of this document it cannot be disputed that Sobel had authority to purchase jute as it expressly provides that "Sobel shall have the right to purchase materials needed for production."

Included in Sobel's general authority is that of supervising the production operations of the plant at Dalton, Ga., and to do so "in a careful and competent manner" to the end that they be performed "economically and efficiently." It necessarily follows that it cannot be said as a matter of agency law that Sobel had no authority to sell surplus jute for the obvious reason that a situation might arise where the careful and competent performance of his duties might require him to sell a surplus which he may have purchased in order to accomplish his ultimate duty of securing economic and efficient production. A mere erroneous judgment in this area would not have the effect of occasioning a limitation on his authority. "The agent's authority shall be construed to include all necessary and usual means for effectually executing it." *Code* § 4-301. See *Oconee County v. Rowland,* 107 Ga. App. 108 (129 SE2d 373); and Restatement of Agency 2d, 26, § 35.

In interpreting this employment contract, we find no support for defendant's contention that the written expression conferring authority *denies* Sobel the authority to contract to dispose of a surplus of raw material which he has the specific power to contract to purchase.

The trial court did not err in refusing to grant the defendant's motion for judgment notwithstanding the verdict.

■ Apart from the question of the general manager's authority to contract to sell jute, there is no evidence to support a jury finding that Sobel, as Crown's general manager, attempted in any manner to obligate his company in this matter. Counsel for plaintiff contend that bilateral contracts were formed, as the letters which Goodroe signed were acceptances of Sobel's offer to sell. Though Sobel may have dictated the terms of the letters by telephone to Griffin, the manufacturer's sales agent, the letters were addressed to Sobel as an officer of Crown and con-

stituted nothing more than a mere *offer* to Crown by Goodroe to purchase the jute on the terms specified in the letter. For this offer to have ripened into a contract, it is essential for it to have been accepted in some fashion.

As the Supreme Court held in *Mallet & Nutt v. Watkins*, 132 Ga. 700, 701 (64 SE 999, 131 ASR 226): "The written promise by Watkins to sell Mallet the cotton, standing alone, is an executory contract and without a consideration. The writing is not signed by Mallet. It shows no promise by Mallet to buy the cotton, or other consideration, to support the promise of Watkins to sell the cotton. Being an executory contract without a consideration, it is nudum pactum and without any binding force. Civil Code, §§ 3656, 3637. In order to make an executory contract binding, there must be a consideration to support the same. Mutual promises constitute a good consideration for each other. Civil Code, § 3661. In the absence of any promise by Mallet to take and pay for the cotton, or other consideration to support the promise of Watkins to sell the cotton, or anything done by Mallet whereby he became bound to take and pay for the cotton, Watkins was not bound to sell the cotton, nor was Mallet bound to buy it. [Citing cases.] The fact that Mallet wrote the written promise signed by Watkins, wherein the name of Mallet appeared, and the fact that the writing, after being signed by Watkins, was delivered to and accepted by Mallet would not bind Mallet to buy the cotton if tendered to him by Watkins."

Sobel's suggestion of terms was but a part of the process of negotiation and constituted no more than an invitation to submit an offer. *Chunn v. Evans,* 15 Ga. App. 57, 61 (82 SE 631). Griffin testified that when he delivered the letter to Sobel he "accepted the letter." This testimony could mean nothing more than that Sobel accepted the delivery of the offer as embraced in the letter. There is no showing that the bid was subsequently accepted by Crown or on its behalf by Sobel either orally, in writing, by delivery of the goods, by acceptance of part payment for the goods, or by another method, nor did any conduct of Crown or of Sobel mislead Goodroe into the belief that his orders had been accepted, within the rule of *Pitcher & Manda v. Lowe,* 95 Ga. 423, 427 (22 SE 678).

Counsel for plaintiff contend that Quitman, the president of Crown, admitted *ratification'* of Sobel's actions because in his testimony he referred to one of the letters as an "agreement with Goodroe" and, in discussing jute shipments made by his company to Goodroe after the date of the first letter, he testified that he *did not know* "whether or not it was on this contract or a prior contract." However, since the plaintiff did not show that Sobel even purported to accept Goodroe's offers to purchase jute, there was no action, either authorized or unauthorized, for the president of Crown to ratify. Further, Goodroe himself testified that jute shipped to his company by Crown after the date of the first letter in question here was some for which he had contracted previously and that no delivery was made on the orders presently in controversy.

Plaintiff did not contend or show that Quitman himself accepted Goodroe's offers to purchase jute, as distinguished from ratifying Sobel's alleged acceptance. Even if Quitman had known about the orders, which he denied, and had contemplated filling them, there is no allegation or proof that he either performed or communicated his intention to perform to Goodroe so as to constitute an acceptance of Goodroe's offer.

Treated as a contended unilateral contract there is absolutely no proof of any act or performance on the part of Crown sufficient to constitute an acceptance of the offer. Treated as a contended bilateral contract there is no proof by ratification or communication of acceptance sufficient to create a contract. It is axiomatic that acceptance of an offer is an essential element of a contract. *Code* §§ 96-101, 20-107, 20-108. It follows that there was no contract upon which a breach could be predicated.

It should be remembered that each of the letters involved here is expressly an order, on credit, for considerably more rolls of jute than Goodroe usually purchased at one time, by a company in admitted financial difficulties. Here the letters were orders for 350 rolls involving over $90,000 gross as compared to the usual orders from Crown by Goodroe of from 10 to 20 rolls at a time involving up to $6,000.

The trial court erred in overruling defendant's motion for a new trial on the general grounds.

■ It is unnecessary for the court to consider special ground 1 of the motion for new trial as presumptively the written contract of employment between Sobel and the defendant Crown is of such vital importance as most certainly to be offered in evidence on the retrial of the case. In that event the interpretation applied to its terms by this court in Division 2 of this opinion with respect to its grant of authority by Crown to Sobel to contract to sell surplus jute will constitute the law of the case.

■ It is the duty of the trial court, whether requested or not, to give the jury appropriate instructions on every substantial and vital issue presented by the evidence, and on every theory of the case. For this reason, if the question of ratification becomes an issue of this quality on the retrial of the case, the court should charge the jury on its meaning, as contended in special ground 2, since this is a technical legal term and is not likely to be understood by the lay jury without clarification.

■ The court agrees that the charge complained of in special ground 3 is misleading and harmful to the defendant since it refers to the burden of proof in attacking a contract "valid upon its face," and the documents involved here which allegedly form a contract are not necessarily within this category.

■ In special ground 4 the charge complained of relates to the validity of an "agreement" for the sale of goods to be delivered at a future date. Defendant contests the charge as an expression of opinion by the court, alleging that the court should have said that such an agreement "might be valid." The court had already charged the jury concerning the essential steps involved in the formation of an agreement, however, and this charge merely informs the jury that an otherwise binding agreement is not invalidated because the goods involved are to be delivered in the future.

■ In ground 5 of its amended motion for new trial defendant assigned error on the admission, over objection that it was hearsay, of evidence of conversation between Griffin and Sobel relating to the negotiations involved in this suit. Under *Code* § 4-315: ". . . The declarations of the agent as to the business transacted by him shall not be admissible against his prin-

cipal, unless they were a part of the negotiation, and constituting the res gestae, or else the agent is dead." Defendant alleged that admission of the testimony was error because at this point in the trial no evidence had been introduced to show agency, or that Sobel had acted within the scope of his authority, or that the principal expressly or impliedly ratified Sobel's act. Georgia courts have held, however, that: "While ordinarily it is better practice in all cases to require proof of the agency before admitting the declarations of the alleged agent . . . (*Abel v. Jarratt*, 100 Ga. 732, 28 SE 453), yet where, after the premature and improper admission of such declarations, there is further evidence amply authorizing a finding that the agency in fact existed, the error in admitting the declarations will not ordinarily require a new trial. *Alexander v. Richardson*, 37 Ga. App. 407 (2) (140 SE 638), and cit." *Smith v. Hendricks*, 43 Ga. App. 361 (158 SE 764); *Indiana Fruit Co. v. Sandlin*, 125 Ga. 222 (5) (54 SE 65). These cases are distinguishable from *Mitchell Auto. Co. v. McDaniel*, 143 Ga. 516 (85 SE 635), relied upon by counsel for defendant, since in that case there was no evidence that the agent had authority to bind the corporation. Since there is other evidence in the instant case which supports a finding that Sobel was Crown's agent, the premature admission of this evidence of conversation during negotiations did not constitute harmful error.

The judgment of the trial judge refusing to grant the defendant's motion for new trial is reversed on the general grounds and on special grounds 2 and 3.

*Judgment reversed. Carlisle, P. J., and Hall, J., concur.*