72182. MENCHIO et al. v. RYMER et al.
(348 SE2d 76)

DEEN, Presiding Judge.

In October 1980, the appellees, Gary and Deborah Rymer, purchased a residential lot from Louis Menchio and contracted with Lou Menchio, Inc., for the construction of a home on the property for $68,820. The appellee moved into the house upon its completion in March 1981. The septic tank system for the house failed in February 1982, and the appellees subsequently commenced this action against Menchio and Lou Menchio, Inc., alleging breach of contract, negligence, and fraud, and seeking both actual and punitive damages. The trial court directed a verdict for the defendants on the fraud claim, but the jury awarded the Rymers $23,000 on the breach of contract claim and $25,000 as punitive damages; the jury also indicated that it found for the plaintiffs on the negligence claim but awarded no dam-

ages. This appeal followed.

Because of a small creek and underground streams on the property, the lot in question originally was classified as a "plot plan lot," which meant that before the county would issue any building permit, the property would have to be modified to lower the ground water table. Menchio dredged the creek and installed a driveway culvert for that purpose before he sold the property to the Rymers, and during the construction of the house other ground work was done in preparation for the installation of a septic tank system, which eventually was inspected and approved by an official with the county health department. In June 1981, dissatisfied with the mosquitoes and snakes attracted to the slow-running surface streams in their frontyard, the Rymers had extensive landscaping done on the property, including installing drain tile and covering over the creek with soil.

In February 1981, the Rymers first became aware of sewage surfacing on the ground. It is undisputed that the septic tank system thus failed because the ground water table had become higher than the septic tank's drainage plain. The Rymers claimed at trial that following Menchio's failure even to try to correct the problem after they contacted him, they spent over $7,000 in an unsuccessful attempt to render the system operational. Eventually, the Rymers' home was adjudicated to be a public nuisance. Evidence adduced at trial supported both the Rymers' contention that their own landscaping in June 1981 had not affected the ground water table, and the defendants' claim otherwise. *Held*:

1. Menchio contends that there was insufficient evidence to sustain a verdict against him individually. The corporate veil may be pierced where it appears that " 'the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and to adhere to the doctrine of corporate entity would promote injustice or protect fraud.' " *Farmers Warehouse v. Collins*, 220 Ga. 141, 150 (137 SE2d 619) (1964). In the instant case, we agree with Menchio that there was no evidence to sustain his individual liability with regard to any breach of contract claim.

The Rymers purchased the residential lot from Menchio individually, but that fact alone does not pierce any corporate veil. The proposed construction contract submitted to the Rymers (although apparently never signed by them) was signed by Menchio as president of the corporation. Deborah Rymer herself, when specifically asked at trial whether she had dealt with Mr. Menchio or a corporation, stated that she had been "dealing with his company." With regard to the actual construction of the house, all construction funds were handled through the corporate account, and all necessary permits were issued

to the corporation. In short, there was no evidence that Menchio acted in any capacity other than corporate president. Accordingly, the judgment against Menchio individually for damages for a breach of contract must be stricken.

2. There was no dispute that under the contract to build the Rymers' house, Lou Menchio, Inc., was obligated to install a properly functioning septic tank system. The contractor contended that the installed septic tank system actually had been functional, but that it failed only because, through no fault of the contractor, the ground water table became too high. There was evidence, however, that the water table eventually became too high because of the contractor's failure to modify the lot adequately, and construction of a house in a fit and workmanlike manner certainly must include proper preparation of the residential lot to render the house habitable. Although there also was credible evidence that the rise in the ground water table resulted from the Rymers' own landscaping of the frontyard, the jury was entitled to resolve this conflict in favor of the Rymers. In short, contrary to the appellants' contention, there was evidence to support the jury's award against Lou Menchio, Inc., for a breach of contract, and we must affirm that portion of the judgment. *Fiske v. Ramey,* 171 Ga. App. 210 (1) (319 SE2d 26) (1984).

3. The appellants also contend that the award for punitive damages was neither authorized by the evidence nor allowable since the Rymers' recovery was under the contract. "Generally, punitive damages are not recoverable for breach of contract, even though the breach may be in bad faith. OCGA § 13-6-10; *Nestle Co. v. J. H. Ewing & Sons,* 153 Ga. App. 328 (265 SE2d 61) (1980)." *Parsells v. Orkin Exterminating Co.,* 172 Ga. App. 74, 76 (322 SE2d 91) (1984). The Rymers emphasize that the jury specifically found for them on their negligence claim as well, although no damages were awarded, apparently because of the trial court's instruction that the jury could find both a breach of contract and negligence to have occurred, but actual damages could be awarded for one theory of recovery only, and that punitive damages could be awarded if it found for the plaintiffs on the negligence claim. Notwithstanding this cogent argument, the fact remains that the jury chose to award the Rymers actual damages on the breach of contract claim rather than the negligence claim. The jury verdict for zero damages on the negligence claim was a judgment for the defendants. *Meadows v. Douglas County Fed. &c. Assn.,* 169 Ga. App. 150 (312 SE2d 169) (1983). Because punitive damages would have been authorized only if actual damages had been awarded for the negligence claim in this case, the award for punitive damages must be stricken. See *Kelley v. Austell Bldg. Supply,* 164 Ga. App. 322 (297 SE2d 292) (1982); *Chrysler Corp. v. Marinari,* 177 Ga. App. 304 (339 SE2d 343) (1985); *Preferred Risk Ins. Co. v. Boykin,* 174 Ga.

App. 269 (10) (329 SE2d 900) (1985).

Contrary to the assertions of the dissent, no procedural impediment prevents addressing this issue, and setting aside the verdict for $25,000 in exemplary damages does not defy logic. While attacking an illegal verdict via a motion for judgment notwithstanding the verdict may be unusual as a practical matter, it is clear that that device was appropriate in this case. In moving for directed verdict, with regard to the claim for exemplary damages, the appellants raised the point of law that an award for a breach of contract would not authorize an award for exemplary damages. As things turned out, the jury awarded exemplary damages based on the breach of contract recovery. In subsequently moving for judgment notwithstanding the verdict, the appellants properly reasserted this issue, and the trial court erred in not striking the illegal award for exemplary damages. Since such a verdict is improper as a matter of law, there is nothing illogical about its eradication.

*Judgment affirmed in part and reversed in part. Banke, C. J., McMurray, P. J., Birdsong, P. J., Sognier and Benham, JJ., concur. Birdsong, P. J., also concurs specially. Beasley, J., dissents. Carley and Pope, JJ., concur in the judgment of the dissent only.*

BIRDSONG, Presiding Judge, concurring specially.

I concur with the majority opinion; however, recent decisions rendered in a number of jurisdictions justify the conclusion that legal barriers to the award of punitive damages in contracts are being lowered. It has been noted that some recent decisions sanctioning the award of punitive damages in contracts do not manifest much concern as to whether the plaintiff's claim falls on the tort or contract side of the borderline (see 61 Mercer Law Rev. 207 (1977)).

The legal barrier OCGA § 13-6-10 remains in place in Georgia.

BEASLEY, Judge, dissenting.

1. As to Division 1, I agree that the damages against Menchio individually "for a breach of contract" must be stricken, but for the same reasons I would require the striking of all damages against him. That is, the verdict against him for negligence, which was the basis for the aggravated damages, would also fall.

The reason is that no acts of negligence were alleged against him other than as agent of the corporation and arising out of the construction contract. Although appellees rely on *Coursey Bldgs. Assoc. v. Baker*, 165 Ga. App. 521 (301 SE2d 688) (1983), as authority for holding the corporate president individually liable as well, the issue was not there raised. Moreover, it is not clear that Coursey Building Associates was a corporation and thus a separate entity, as in the present case.

Although appellees argue that the lot was purchased from the individual and that the ground water table was not adequately lowered by him before he sold the lot to them, they did not sue on the contract of sale of the land but only on the construction contract. The latter was made only with the corporation, as the majority states. The complaint merely alleges negligent construction of the home and the sewage system, which were matters provided for in the construction contract, not in the contract of sale of the property. No negligence is alleged with respect to the sale of the land by the individual. This is confirmed in the pretrial order.

Defendant Menchio properly raised and preserved his ground challenging personal liability. One of the grounds for directed verdict was that there was no evidence of individual liability with respect to construction. The court denied the motion in this regard, the jury returned verdicts against Menchio individually, and the motion for judgment notwithstanding the verdict raised it again.

The law provides: "Not later than 30 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict." OCGA § 9-11-50 (b). The court's denial of the motion paved the way for review by this court of the enumeration claiming there was insufficient evidence to sustain a verdict against Menchio individually. *Crown Carpet Mills v. C. E. Goodroe Co.*, 108 Ga. App. 327, 330 (1) (132 SE2d 824) (1963).

2. I concur in Division 2 of the opinion.

3. I must dissent as to Division 3 because I would uphold the jury verdict for aggravated damages against the corporation.[1] The jury verdict should be sustained if it can be. OCGA § 9-12-4; *Georgia Farm &c. Ins. Co. v. Collins*, 161 Ga. App. 149, 150 (2) (288 SE2d 106) (1982); *Calhoun v. Babcock Bros. Lumber Co.*, 199 Ga. 171, 176 (33 SE2d 430) (1945). This court is bound to construe all evidence and every presumption and inference arising therefrom in favor of the jury's verdict. *Gilman Paper Co. v. James*, 235 Ga. 348, 350 (219 SE2d 447) (1975). There was evidence which would support it, as the

---

[1] I refer to them as aggravated rather than as "punitive" or "exemplary," damages because that is what I understand them to be, OCGA § 51-12-5, and to avoid confusion with "vindictive" damages, OCGA § 51-12-6. See Cobb & Eldridge, Georgia Law of Damages, 2d ed., Chapter 4, which discusses the confusion reigning with regard to exemplary, punitive, aggravated, and vindictive damages. They would not be "punitive" or "exemplary" if given as *compensation* for wounded feelings of plaintiff, because the focus of compensation is the plaintiff's loss and not the disapproval-deserving action of the defendant. They might be said to have the secondary efficacy of "punishment" if the primary purpose they are given is to *deter* the defendant from repeating the conduct and to so set an "example" for defendant of the results he can expect from repetition. These are the two bases for aggravating damages in OCGA § 51-12-5.

trial court pointed out in denying the motion for directed verdict on this ground. Where such is the case, it should be upheld, and the trial court appropriately did so in again denying the motion for judgment notwithstanding the verdict and the motion for new trial. "The standard for granting a directed verdict or a judgment notwithstanding the verdict is the same. Where there is no conflict in the evidence as to any material issue, and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed." *Pendley v. Pendley*, 251 Ga. 30 (302 SE2d 554) (1983). Such was not the case here. On appeal from denial of a motion for directed verdict, the standard is the "any evidence" standard. *C & W Land Dev. Corp. v. Kaminsky*, 175 Ga. App. 774, 775 (1) (334 SE2d 362) (1985).

Appellants claim, however, that even if the evidence was sufficient, aggravated damages were unauthorized in the absence of an award of actual damages for negligence. Appellees are correct in arguing that this ground was not properly preserved. Appellees' position is that it was not raised in the motion for directed verdict and so could not be raised in the motion for judgment notwithstanding the verdict. That is a true statement of the law. OCGA § 9-11-50 (b); *Battle v. Yancey Bros. Co.*, 157 Ga. App. 277 (277 SE2d 280) (1981); *Nationwide Mut. Fire Ins. Co. v. Rhee*, 160 Ga. App. 468 (287 SE2d 257) (1981).

But of course, the ground urged here against aggravated damages could not be raised in a motion for directed verdict in the first place because the ground would not, and did not, arise before the verdict was returned. It was the face of the verdict that gave rise to the complaint. It follows that it could not be ground for a motion for judgment notwithstanding the verdict either, because it would not have the prerequisite prior assertion in a motion for directed verdict. The point is, an impediment to judgment which could not as a practical matter arise before a motion for directed verdict would be timely, cannot be a ground for judgment notwithstanding the verdict.

Normally, of course, a motion for directed verdict and its follow-up motion for judgment notwithstanding the verdict are grounded on an alleged insufficiency of evidence. However, they can also raise a legal ground which would entitle the movant to judgment as a matter of law. *Southern Bell Tel. &c. Co. v. Brackin*, 215 Ga. 225, 226 (2) (109 SE2d 782) (1959); *Kicklighter v. Kicklighter*, 217 Ga. 54, 56 (1) (121 SE2d 122) (1961). But the ground urged in the motion for judgment notwithstanding the verdict here does not enjoy such a character. That is to say, even if this ground had merit, it would not entitle defendant to judgment as a matter of law but only to a new trial, or to a remolding pursuant to OCGA § 9-12-5.

While it may have been a proper ground for new trial, see *Dye v.*

*Turner Concrete*, 119 Ga. App. 78, 80 (166 SE2d 773) (1969), it was not made a basis for the request for new trial by appellant. The attack on "exemplary" damages as being unawardable absent an award of actual damages was made *solely* in the motion for judgment notwithstanding the verdict. Only the general grounds and, by amendment, the ground of newly discovered evidence, were claimed as warranting a new trial. Thus the court correctly denied the motion for judgment notwithstanding the verdict as to this ground, as it is not the office of this motion to test an alleged defect in the verdict such as the one urged here. See, as to another type of alleged defect, *Miller & Meier & Assoc. v. Diedrich*, 174 Ga. App. 249, 252 (3) (329 SE2d 918) (1985).

Furthermore, the verdict was not defective. We should examine the verdict in the context of the trial and especially the charge to the jury and the verdict form it was instructed to use. The verdict does not stand for its meaning all by itself, plucked out of the record. *Morris v. Bell*, 100 Ga. App. 341, 343 (1) (111 SE2d 270) (1959).

The complaint had claimed "punitive damages" somewhat ambiguously, in a separate count from the negligence count, in such a way that it appeared to be a count alleging the tort of fraud but not setting out the elements of fraud and not claiming any but "punitive" damages. At the hearing on the motion for directed verdict, plaintiffs argued that the "punitive" damages could be attributable to the tort of negligence, because of the allegedly aggravated nature of it, but also argued that the evidence supported a claim for the tort of fraud. The court granted the motion as to the latter but denied it and respected the theory of the aggravated nature of the tort of negligence.

That is how it went to the jury, and therein arose the trouble which lies at the heart of the problem initially apparent from the face of the verdict.

The court instructed the jury on both the theories of breach of contract and negligence. It gave the measure of damages as to each. It made clear that the jury could find both breach of contract and negligence, and it made clear that the jury could, under such circumstances, only make one award of actual damages. That is, there could be no double recovery, or double compensation, for the same injury which resulted from the breach of contract and from the negligence as well.

The court also charged the jury as to nominal damages, which might be awarded "if an injury is small or the mitigating circumstances are strong." This is a portion of OCGA § 51-12-4.

It also correctly instructed the jury that, as to the negligence claim, "there may be aggravating circumstances, either in the act or in the intention, and in that event, the jury may give additional dam-

ages either to deter the wrongdoer from repeating his action or as compensation for wounded feelings of the plaintiffs," paraphrasing OCGA § 51-12-5.

The court, however, did not instruct the jury on how it should award damages if it found both breach of contract and negligence with aggravating circumstances.

The majority would require an award of at least nominal damages in the negligence action in order to affirm the aggravated damages, shutting out the fact that the jury had already awarded actual damages for the conduct and had expressly found negligence. This would at first blush serve the rule that the aggravated damages are sustainable if at least nominal damages are recovered, because they are "additional" damages. OCGA § 51-12-5; *Haugabrook v. Taylor*, 225 Ga. 317 (168 SE2d 162) (1969). But it ignores the rule against double awards, which the jury had been instructed and scrupulously obeyed.

To accomplish the majority's conclusion, it compels indulgence in a fiction. That is, once the jury awarded substantial damages in contract and could not doubly award them again in negligence, the damages having been consumed or "used up" in the contract action, it would have to manufacture additional nominal actual damages or borrow some from the contract award for the negligence action. The necessity for this tortured result would not have even occurred to the jury, as the court did not charge that to award aggravated damages for tort, it would first have to award at least nominal damages. This fiction should not be introduced into the law because it would mean that full compensation would not be awarded for the breach of contract, OCGA § 51-12-4, and it would also mean that the jury found the damages for negligence to be small when in fact it was finding that the damages for breach of contract and negligence from the conduct were identical, one and the same, and substantial.

This illogical parceling of damages is not necessary when the reason for the "at least *some* damages" rule is examined. The reason that at least nominal damages are generally called for is that they are an indication that a tort has been found and damage has been suffered, for without damage, there is no tort. *Injuria absque damno*. OCGA § 51-1-6; *Cotton States Mut. Ins. Co. v. Crosby*, 244 Ga. 456, 457 (260 SE2d 860) (1979). The *fact* of damage is the underlying criterion, not the amount. "[I]n order for the plaintiff to be entitled to ("punitive") damages there must be some injury which would support an action for at least nominal damages. A tort must have been committed before punitive damages can be assessed. Since no injury is shown to the plaintiff in the present case, he has no cause of action for punitive damages." *Foster v. Sikes*, 202 Ga. 122, 126 (42 SE2d 441) (1947).

Thus, where the jury *found* breach of contract, aggravated negli-

gence, and actual damages of $23,000, it defies logic to conclude that it could not award the $25,000 damages it intended for the aggravated nature of the negligence because it did not *award* actual damages for the negligence, when the plain reason it did not do so was because it was strictly instructed that it could not do so since that would be a double recovery.

The whole verdict should be examined. It "shall have a reasonable intendment and shall receive a reasonable construction." OCGA § 9-12-4; *Wade v. Wade*, 222 Ga. 389, 391 (1) (149 SE2d 816) (1966). The parts are connected. This was one jury and one case and one set of circumstances. A suit may be brought on both theories even though there is a single act or course of conduct. *Coursey Bldgs. Assoc. v. Baker*, supra at 524. The combination of the findings by the jury here clearly support its award of "exemplary" damages. But for $1 transferred by the jury to the tort count from the contract count on the verdict form as submitted to it, this court would strike the whole amount of the evidence-supported damages which the jury clearly desired to award plaintiffs "to deter defendant builder from repeating the acts complained of" or "as compensation to the plaintiffs" for what they had gone through in connection with their new house, i.e., their "wounded feelings." But the way to accommodate the two principles is precisely as the jury did. One rule is that there can be no double recovery. *Pennsylvania Threshermen &c. Ins. Co. v. Hill*, 113 Ga. App. 283 (148 SE2d 83) (1966); *Hall v. Helms*, 150 Ga. App. 257 (257 SE2d 349) (1979). The other is that aggravating damages cannot be awarded if there are not at least nominal damages because it demonstrates there was no cognizable tort. Damage is an element. OCGA §§ 51-1-6; 51-1-7; 51-1-8. *Parsons v. Foshee*, 80 Ga. App. 127, 129 (1) (55 SE2d 396) (1949). The majority would sacrifice the first principle or make an exception to the damages principles that a plaintiff is entitled to *full* compensation whether it be for contract breach or for tort (OCGA §§ 51-12-4; 13-6-1; *Lastinger v. City of Adel*, 69 Ga. App. 535, 536 (26 SE2d 158) (1943)). The majority would also require blindered adherence to the second principle by not recognizing that nominal damages are not required when substantial actual damages have already been awarded for the same conduct as the result of breach of contract. It mandates an inflexible application of the rule. But the law must be resilient and not rigid. The two principles are completely accommodated by what the jury did here, when viewed in its entirety.

Thus the jury did give "additional" aggravating damages, as authorized by OCGA § 51-12-5, over the $23,000 it awarded of the $40,000 sought as actual damages for the breach of contract and negligence. In accord with the correct instruction of the court that it could not award that amount twice, it obviously had to award zero

actual damages for the negligence it found; it could not award the self-same actual damages again, and it could not award nominal damages because the actual damages were *not* "small or the mitigating circumstances strong. . . ." OCGA § 51-12-4. As to the former, the jury had found the actual damages to be $23,000; as to the latter, the jury expressly found aggravating, not mitigating, circumstances in connection with the negligence.

Thus the jury verdict was in conformity with the law and was not illegal. It is true that it is not error to strike punitive damages where no actual damages are returned by the jury, which is the holding of the case cited by the majority, *Kelley v. Austell Bldg. Supply*, 164 Ga. App. 322 (297 SE2d 292) (1982). But we are closing our eyes to the total picture of facts conveyed by this jury's verdict, when we say that no actual damages for negligence were awarded here. *Kelley* did not deal with the double cause of action/single recovery for same damages situation which we have here.[2]

I am authorized to state that Judge Carley and Judge Pope concur in the judgment only of this dissent.

DECIDED JUNE 24, 1986 —
REHEARING DENIED JULY 24, 1986 —

*Joel E. Dodson*, for appellants.
*Seaton D. Purdom, Robert D. Feagin*, for appellees.

---

[2] Perhaps it would be better in such cases not to charge the rule against double recovery but rather to reserve its application to the entry of the judgment by the court. This is done in other situations, such as the addition of interest. OCGA § 9-12-10; *Lang v. So. Ga. Investment Co.*, 38 Ga. App. 430 (2) (144 SE 149) (1928). Then the actual damages for negligence would appear on the verdict. It seems that the prohibition against double *recovery* would address itself more appropriately to the judgment than to the verdict. But here no one objected to the jury's being charged with the job of applying the prohibition against double recovery.