SEE, Justice.
University Auto Sales, Inc., d/b/a University Marine & Sailing Center (“University Marine”) contracted with Southern Exposition Management Company (“Southern Exposition”) to display boats at a boat show in Atlanta, Georgia. After difficulties arose from the boat show, University Marine sued Southern Exposition, alleging, among other things, breach of contract, fraud, and tortious interference with business and/or contractual relations. A jury awarded University Marine $150,-000 in compensatory damages on the breach-of-contract claim, $225,000 in punitive damages on the fraud claim, and $225,000 in punitive damages on the tor-tious-interference claims. We conclude that the trial court erred in denying Southern Exposition’s motion for a directed verdict on the breach-of-contract claim and erred in entering a judgment based on the punitive-damages awards on the fraud and tortious-interference claims in the absence of compensatory damages awards on those claims. Accordingly, we reverse and render a judgment for Southern Exposition on both the contract claim and the tort claims.
I.
In January 1992, Jack Davis, the sole owner of University Marine, telephoned Carol Nix, an assistant manager for Southern Exposition, to inquire about reserving space to exhibit recreational boats at a boat show to be held in Atlanta in March. Nix sent Davis a “Space Application and License Agreement” (the “Original Contract”) relating to the show. The Original Contract provided for the amount of floor space that Davis had requested. The Original Contract provided blank spaces in which the applicant could list the types of boats he wished to display at the boat show. Davis listed Windsor Craft, Electra Craft, and Excel boats. Davis then signed and dated the Original Contract and returned it to Southern Exposition.
In late February or early March 1992, Davis again called Nix to discuss purchasing additional space at the boat show. Davis alleges that Nix told him that no one was listed as a Wellcraft dealer at the boat show and that he could also bring Well-craft boats. Nix mailed an amendment to the Original Contract (the “Amendment”) to Davis. The Amendment expressly provided for University Marine’s lease of additional space, but it did not state that Davis could bring Wellcraft boats to the boat show.
Approximately one week before the boat show, which was scheduled for late March 1992, Genmar Industries, Inc. (“Genmar”), the manufacturer of Wellcraft boats, appointed a company known as “JOA” to exhibit Wellcraft boats at the show. Davis, who was unaware of the JOA appointment, brought Windsor Craft, Electra Craft, Excel, and Wellcraft boats to the Atlanta boat show. Davis set up his boats in the space he had leased under the Original Contract and the.Amendment.
Before the show opened, Kevin Maho-ney, Genmar’s southeastern sales representative, saw University Marine’s exhibit. He told Davis that University Marine was not authorized to exhibit Wellcraft boats and that the boats would have to be re *994 moved. On the third day of the boat show, employees of Southern Exposition removed Davis’s Wellcraft boats from his display and put them in a storage area.
University Marine filed this action against Southern Exposition and Genmar, claiming, among other things, breach of contract, fraud, and tortious interference with business and/or contractual relations. Before trial, Davis settled his claims against Genmar. The trial court denied Southern Exposition’s motion for a directed verdict on all claims. The jury returned a verdict for University Marine on all claims, awarding $150,000 in compensatory damages on the breach-of-contract claim, $-0- in compensatory damages and $225,000 in punitive damages on the fraud claim, and $-0- in compensatory damages and $225,000 in punitive damages on the claim alleging tortious interference with business and/or contractual relations., The trial court entered a judgment on that verdict. Southern Exposition appealed.
II.
Prior to this appeal, the parties agreed that the substantive law of the State of Georgia applies to this case, and the trial court so ruled. Because neither party appeals this ruling of the trial court, Georgia law is the law of the case. Big B, Inc. v. Cottingham, 634 So.2d 999, 1002 (Ala.1993) (stating that where a trial court’s ruling is not appealed, it becomes the law of the case).[1]

A. Breach of Contract

Southern Exposition contends that the trial court erred in denying its motion for a directed verdict on the breach-of-contract claim because, it says, University Marine’s evidence of the contract ■ term that was allegedly breached is made inadmissible by the parol evidence rule. Specifically, Southern Exposition contends that the only evidence of the particular term of the contract that it allegedly breached — that University Marine could display Wellcraft boats at the Atlanta boat show — -was Davis’s testimony regarding an alleged oral modification of the Original Contract, a modification, that is not reflected in the written Amendment. Thus, Southern Exposition contends, because the alleged oral modification was not included in the Amendment to the Original Contract, the parol evidence rule bars University Marine’s attempt to alter the terms of the unambiguous Amendment.
University Marine responds by arguing that the parol evidence rule does not bar the introduction of the alleged oral modification allowing University Marine to display Wellcraft boats at the boat show because, it says, the Original Contract as amended was ambiguous. Further, University Marine contends that the parol evidence rule does not bar evidence of the alleged oral modification offered to amplify the Amendment because, it says, the Amendment was fraudulently induced.
In reviewing a trial court’s denial of a defendant’s motion for a directed verdict, we must determine whether the plaintiff presented substantial evidence in support of his claim. Hosea O. Weaver & Sons, Inc. v. Towner, 663 So.2d 892, 894 (Ala.1995).[2] To support a breach-of-contract claim, a plaintiff must show the existence of a contract, the defendant’s breach of a specific term of that contract, and damage resulting from that breach. Graham Bros. Constr. Co. v. Matthews Con- *995 trading Co., 159 Ga.App. 546, 550, 284 S.E.2d 282, 286 (1981). A plaintiff may not support his claim with evidence that is barred by the parol evidence rule. See Schluter v. Perrie, Buker, Stagg & Jones, P.C., 230 Ga.App. 776, 776, 498 S.E.2d 548, 545 (1998) (stating that where a contract is unambiguous, parol evidence is inadmissible).
Georgia courts have stated the par-ol evidence rule as follows:
“[A] prior or contemporaneous parol agreement, which contradicts, varies, or otherwise modifies a written agreement between the same parties and pertaining to the same subject-matter, is merged into the written agreement; and ... where the parties have reduced to writing what appears to be a complete and certain agreement, it will, in the absence of fraud, be conclusively presumed that the writing contains the entire contract.”
Indiana Truck Corp. v. Glock, 46 Ga.App. 519, 519-20, 168 S.E. 124, 125 (1933). The parol evidence rule applies not only to original agreements, but also to written amendments to the original agreements. See, e.g., United Artists Communications, Inc. v. Corporate Property Investors, 410 N.W.2d 39, 42 (Minn.Ct.App.1987) (holding that considering evidence of an alleged oral modification of a lease would violate the parol evidence rule where the evidence contradicts or varies the terms of a written modification); Rubey v. Wood, 15 Utah 2d 312, 392 P.2d 485 (1964) (holding that a contract for the sale of land and a written modification of that contract were not so ambiguous and uncertain that it was necessary to take parol evidence to determine the meaning of their provisions).
The specific issue here is whether a term of the contract gave University Marine the right to display Wellcraft boats at the Atlanta boat show. No such term appears in either the Original Contract or the Amendment. The Original Contract states in pertinent part:
“LIST PRODUCTS/LINES TO BE EXHIBITED:
(Only those listed here will be allowed to be displayed.)
“Windsor Craft
Electra Craft
Excel.”
The Amendment provides in pertinent part:
“SEMCO Productions, of 1130 Hightower Trail, Atlanta, GA 30350 and the undersigned Exhibitor agree to modify as listed below the existing Space Application and License Agreement for the above show as follows:
‘WINDSOR BOATS/UNIVERSITY MARINE has expanded their exhibit space # P-15 from a 20’ x 42’ area to an additional 42’ x 30’ area. Total cost due for additional square footage is $3,528.00. In the event of any conflict or inconsistency between the provisions contained in this Modification Agreement and said original Space Application and License Agreement, this modification shall control in all respects.”
(Emphasis added.) Davis admitted that the alleged oral modification regarding his right to display Wellcraft boats was reached in the same telephone call to Nix that generated the Amendment.
On its face, the Original Contract, taken with the Amendment, is not ambiguous. The Amendment does not purport to alter or vary that term of the Original Contract that clearly restricts the types of boats University Marine could display. The alleged oral modification that would allow University Marine to display Wellcraft boats was “between the same parties and pertaining to the same subject-matter, [and, thus,] is merged into the written [Amendment].” Glock, 46 Ga.App. at 519, 168 S.E. at 125. Because the Amendment appears to be complete, we must “conclusively presume[]” that the writing contains the entire amendment. Id.[3] Thus, *996 because the Original Contract, as amended, contained no ambiguity, University Marine’s evidence of an alleged oral modification of the Original Contract is not admissible as a means of clarifying an ambiguity.
University Marine also argues that its evidence of an alleged oral modification of the Original Contract is not barred by the parol evidence rule because, University Marine says, it constitutes evidence of fraudulent inducement of the contract. Specifically, University Marine argues that Southern Exposition fraudulently induced it to agree to the Amendment by representing that University Marine could bring Wellcraft boats to the boat show and that University Marine would be the only Well-craft exhibitor at the boat show. Thus, University Marine contends that the evidence could be used to support its breach-of-contract claim. This argument misconceives the purpose for which evidence of fraudulent inducement is admissible.
The parol evidence rule does not bar evidence of fraudulent inducement that may vary from the express terms of a written contract. Glock, 46 Ga.App. at 520,168 S.E. at 125.[4] Evidence of fraud is admissible because such evidence does not raise “a question of contradicting or varying the terms of the written instrument, but of showing that it never became a valid contract; that, because of fraud in its inception, it was ineffective as between the parties thereto, to create contractual relations.” Annotation, Parol-Evidence Rule; Right to Show Fraud in Inducement or Execution of Written Contract, 56 A.L.R. 13, 32 (1928) (citing Hixon v. Hinkle, 156 Ga. 341, 118 S.E. 874 (1923), and Chicago Bldg. & Mfg. Co. v. Butler, 139 Ga. 816, 78 S.E. 244 (1913)); accord 37 Am.Jur.2d Fraud and Deceit § 451 (1968) (“[W]hen fraud enters into a transaction to the extent of inducing a written contract, the instrument never becomes a valid contract....”). Thus, where extrinsic evidence is held admissible to show fraud in the inducement,
“courts have pointed out that the action is not upon the contract, to enforce a warranty or asserted right at variance with the terms of the contract, in which case the evidence would be inadmissible, but to avoid the contract, and to defeat it on account of the fraud, or to recover for fraud independent of the contract. ...”
Annotation, Parol-Evidence Rule, 56 A.L.R. at 33 (emphasis added). Applying this well-established rule, the Appellate Division of the Supreme Court of New *997 York stated that evidence of fraudulent inducement is admissible to support a fraud claim, but added: “Had the action been brought for breach of the written contract the evidence offered would have been inadmissible.” Bennett v. Burch-Buell Motor Corp., 221 A.D. 517, 517, 224 N.Y.S. 666, 666 (1927). Accord Calloway v. Booe & Collier, 195 S.W. 1174 (Tex.Civ.App.1917) (stating that evidence of fraudulent inducement was admissible for the purpose of rescinding the contract, but would have been inadmissible in an action on the contract); Johnson v. Brockelbank, 20 S.C.L. (2 Hill) 353 (1834) (stating that the parol evidence rule bars evidence to add to or vary the terms of the contract when the action is on the contract, but when the evidence is of fraudulent inducement it is admissible). The Georgia courts have recognized this rule in holding that where a contract is shown to have been fraudulently induced, the defrauded party may void the contract by asserting that the parties never reached a valid agreement. See del Mazo v. Sanchez, 186 Ga.App. 120, 366 S.E.2d 333 (1988) (stating that fraud renders a contract voidable at the electioh of the injured party and that parol evidence is admissible to show that a writing was originally void or subsequently became void).
University Marine, however, submitted its evidence of fraudulent inducement for the purpose of showing a breach of the Original Contract, as amended, not for the purpose of voiding that contract. Thus, the parol evidence rule bars the admission of this evidence. Without admissible evidence that the Original Contract, as amended, contained a provision allowing University Marine to show Well-craft boats, University Marine failed to present substantial evidence that Southern Exposition had breached the contract. Accordingly, we hold that the trial court erred in not directing a verdict for Southern Exposition on the breach-of-contract claim.

B. Damages Awards on the Tort Claims

Southern Exposition argues that because the jury failed to award compensatory damages on either of' the tort claims, the trial court erred' in approving the jury’s award of $225,000 in punitive damages on the fraud claim and $225,000 in punitive damages on the tortious-inter-ference claim. Southern Exposition argues that Georgia law specifically requires an award of compensatory damages before any amount of punitive damages can be awarded.
University Marine responds by arguing that this rule of Georgia law does not bar the award of punitive damages in this case, because the jury initially awarded compensatory damages on the fraud and tortious-interference claims. While the jury reduced its awards of compensatory damages on the two tort claims to $-0- after receiving instructions from the trial court regarding the duplication of compensatory damages, University Marine argues it is clear that the jury intended to award compensatory damages on the tort claims. University Marine relies on an Alabama case that permits a reviewing court to look beyond the_ final verdict to determine whether the jury intended to award compensatory damages. BIC Corp. v. Bean, 669 So.2d 840, 845 (Ala.1995).
It is clear that the law governing the award of damages, including punitive damages, in a tort case is substantive law, not procedural law. See Western Union Telegraph Co. v. Favish, 196 Ala. 4, 12-13, 71 So. 183, 187 (1916) (“[T]he measure and elements of the recovery for the wrong suffered is that prescribed by the law of the place where the tort is committed.”) (citing Western Union Telegraph Co. v. Brown, 234 U.S. 542, 34 S.Ct. 955, 58 L.Ed. 1457 (1914)); Restatement (Second) Conflict of Laws § 171, cmt. d (1971) (stating that the right to exemplary damages is determined by the law of the state that has the most significant relationship to the occurrences and the parties). Because this issue is governed by the substantive law of *998 Georgia, we must look to the statutes and caselaw of Georgia to determine whether the trial court erred in approving the final jury award of $-0- compensatory damages and a total of $450,000 in punitive damages on University Marine’s tort claims.
Section 51-12-5(a), Ga.Code Ann.1982, as reflected in the 1998 cumulative supplement, provides:
“In a tort action in which there are aggravating circumstances, in either the act or the intention, the jury may give additional damages to deter the wrongdoer from repeating the trespass.... ”
(Emphasis added.) Georgia courts have interpreted this language as requiring an award of compensatory damages before any punitive damages may be awarded. For example, in Menchio v. Rymer, 179 Ga.App. 852, 348 S.E.2d 76 (1986), the plaintiffs contracted with the defendant for the defendant to construct the plaintiffs’ home. Shortly after the plaintiffs moved into the home, the septic tank system failed. Id. at 852, 348 S.E.2d 76. The plaintiffs claimed, among other things, breach of contract and negligence. Id. The jury awarded the plaintiffs $23,000 in compensatory damages on the breach-of-contract claim and $25,000 in punitive damages, without naming the claim to which the punitive damages applied. Id. The jury also stated that it found for the plaintiffs on the negligence claim, but awarded $-0- compensatory damages on that claim. Id. The Court of Appeals of Georgia held that punitive damages could not be awarded on the breach-of-contract claim and that, although the jury stated that it found in favor of the plaintiffs on the negligence claim, it failed to award any compensatory damages on that claim. Id. at 854, 348 S.E.2d at 78. Because punitive damages would have been authorized only if compensatory damages had been awarded, the Georgia court struck the punitive damages award and held that the jury’s award of $-0- compensatory damages was a judgment for the defendants. Id. Accord Chrysler Corp. v. Marinari, 177 Ga. App. 304, 339 S.E.2d 343 (1985) (stating that an award of compensatory damages on a breach-of-warranty claim could not support an award of punitive damages on a fraud claim) (citing Wade v. Culpepper, 158 Ga.App. 303, 305, 279 S.E.2d 748, 750 (1981) (“[An] award of punitive damages ..., in the absence of any finding of actual damages, is improper as a matter of law. ... A judgment based on such a verdict will be set aside.”)) (emphasis added).
Likewise, in its action against Southern Exposition, University Marine alleged breach of contract, fraud, and tortious interference with business and/or contractual relations. The jury ultimately awarded University Marine $150,000 on the breach-of-contract claim and a total of $450,000 in punitive damages. Although the jury stated that it found in favor of University Marine on the fraud and tortious-interference claims, it did not award compensatory damages on those claims. Because punitive damages would have been authorized only if compensatory damages had been awarded, the punitive damages awards on those claims must be reversed and a judgment rendered for Southern Exposition on those claims. Menchio, 179 Ga.App. at 854, 348 S.E.2d at 78; Marinari, 177 Ga. App. at 306, 339 S.E.2d at 345.
Moreover, the conclusion that an award of $-0- compensatory damages on a tort claim constitutes a verdict for the defendant on that claim cannot be avoided by a trial court’s inaccurate or misleading statements with respect to preliminary jury verdicts that were not incorporated into the final judgment. In Wadlington v. Wadlington, 235 Ga. 582, 583-84, 221 S.E.2d 1, 2 (1975), the Supreme Court of Georgia stated:
“ ‘[IJt is not only the right, but the duty, of the trial judge, when a verdict, as returned is ambiguous or indefinite, to call the attention of the jury to the faults of the verdict, ask them what they mean by the verdict or answers returned, and, upon ascertaining what is meant, to direct them to return to [the *999 jury] room and correct the verdict so as to make it speak their meaning. A judge has supervision of the whole case, and is not merely a figurehead to sit by and see injustice done or to allow the reception of an ambiguous or indefinite verdict which is likely to give rise to more litigation or to result in another long and weary trial.’ ”
(Quoting Jordan v. Downs, 118 Ga. 544, 546, 45 S.E. 439, 440 (1903) (emphasis added)). In Menchio, 179 Ga.App. at 854, 348 S.E.2d at 78, the plaintiffs argued that the only reason the jury did not award them compensatory damages on their negligence claim was that the trial court instructed the jury that although it could find both a .breach of contract and negligence to have occurred, it could award compensatory damages on only one theory of recovery. Notwithstanding this assertion, the Court of Appeals of Georgia held that the jury’s award of $-0-compensatory damages on the plaintiffs negligence claims was a judgment for the defendants. Id. at 854, 348 S.E.2d at 78.
Similarly, University Marine asserts that the only reason the jury did not award it compensatory damages on its fraud and tortious-interference claims was that the trial court instructed the jury that compensatory damages could be awarded only for the breach-of-contract claim or for the tort claims, but not for both. Notwithstanding this assertion, the jury’s award of $-0-compensatory damages on University Marine’s tort claims amounted to a verdict for Southern Exposition.[5] Menchio, 179 Ga.App. at 854, 348 S.E.2d at 78.

III. Summary

The trial court erred when it admitted parol evidence with respect to University Marine’s breach-of-contract claim and when it approved the award of punitive damages on the tort claims. Consequently, the trial court erred in not directing a verdict for Southern Exposition on the breach-of-contract claim and in entering a verdict for University Marine on the tort claims. Accordingly, we reverse the judgment of the trial court and render a judgment for Southern Exposition.[6]
REVERSED AND JUDGMENT RENDERED.
HOOPER, C.J, and MADDOX, SHORES, HOUSTON, and LYONS, JJ., concur.

. See generally Restatement (Second) Conflict of Laws, § 188 (1971) ("The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties ....”); id. at § 145 ("The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which ... has the most significant relationship to the occurrence and the parties

. The standard for reviewing the denial of a motion for a directed verdict is a procedural issue, governed by the law of the forum. See Adams v. Fred Weber, Inc., 849 F.2d 1018, 1020 (7th Cir.1988).

. University Marine also argues that a "Free Product Directory Listing” form that Davis *996 executed and submitted with the Original Contract created an ambiguity because, it argues, Davis wrote on the form that he would be bringing Wellcraft boats to the boat show. See Quintanilla v. Rathur, 227 Ga.App. 788, 790, 490 S.E.2d 471, 474 (1997) (stating that an agreement may consist of multiple documents and that when instruments are executed at the same time in the course of a single transaction they should be read and construed together). Thus, University Marine argues that the "Free Product Directory Listing” form is part of the Original Contract, as amended, and creates an ambiguity in the total agreement. Our examination of the record, however, reveals that the "Free Product Directory Listing" form lists only the generic types of products that an exhibitor can display (e.g., "Performance boats, Offshore,” "Inboard Engines,” "Boat Covers/Tops"). The form does not list any brand names of products, and it specifically does not list Wellcraft boats. Accordingly, even if the "Free Product Directory Listing” form, which Davis submitted contemporaneously with the Original Contract, is considered part of the Original Contract, it creates no ambiguity in the Original Contract. See Karlan, Inc. v. King, 202 Ga.App. 713, 715, 415 S.E.2d 319, 321 (1992) (stating that an ambiguity exists when there is an uncertainty of the meaning). Further, although a subsequently published directory listed the space where University Marine was located as exhibiting Wellcraft Boats, University Marine makes no alternative argument as to how this directory arose from a contractual writing that creates an ambiguity in the Original Contract, as amended. See Larochelle v. State, 231 Ga.App. 736, 738, 499 S.E.2d 371, 373 (1998) (declining to address an argument not raised by a party on appeal).

. Georgia has codified the parol evidence rule. Ga.Code Ann. 1995, §§ 24-6-1 to -10.

. We note that for cases governed by Alabama law and filed before July 17, 1998, this Court would remand if an award of punitive damages was not supported by an award of compensatory damages. Life Ins. Co. of Georgia v. Smith, 719 So.2d 797 (Ala.1998).

. Because we render a judgment for Southern Exposition, we pretermit discussion of the other issues raised by Southern Exposition, including: (1) whether Georgia’s cap of punitive damages applies; (2) whether the jury was properly charged regarding damages for lost profits; (3) whether University Marine waived its fraud claim by not repudiating the contract; (4) whether clear and convincing evidence supported the award of punitive damages; and (5) whether the punitive damages award was excessive.